### MALER v. HILL. (No. 8848.)

(Court of Civil Appeals of Texas. Galveston. April 22, 1926.)

**1. Appeal and error ⚖️961—Witnesses ⚖️79(3)—Lunatic's competency to testify is for trial court, whose refusal to admit deposition will not be reversed, unless record shows abuse of discretion.**

Competency of lunatic to testify is for trial judge, whose refusal to admit such witness' deposition will not be reversed, unless abuse of discretion appears from record.

**2. Witnesses ⚖️45(1)—Insane witness' understanding and appreciation of sanctity of oath must be shown before testimony can be admitted.**

While mental weakness or delusion may be held to affect weight rather than admissibility of insane witness' testimony, it must be shown, before it can be admitted, that witness understood and appreciated sanctity of oath.

**3. Witnesses ⚖️79(3)—Insane person's understanding and appreciation of sanctity of oath cannot be presumed, nor inferred as matter of law, from facts that she correctly and intelligently answered several questions and that person present thought or judged she understood nature of oath.**

That insane person understands and appreciates sanctity of oath is not presumed and cannot be inferred as matter of law from facts that witness correctly and intelligently answered several questions and that person present thought or judged that she understood nature of oath.

**4. Witnesses ⚖️78—Abuse of discretion in excluding insane witness' deposition held not shown by testimony of one present when taken.**

Testimony of one present when insane witness' deposition was taken *held* not to show that trial judge abused discretion in refusing to admit depositions in evidence.

**5. Rape ⚖️65—To entitle insane woman to damages from carnal intercourse consented to by her, it must be shown that she was so mentally diseased at time as to have no will to oppose act and that defendant knew such fact (Pen. Code 1925, art. 1183).**

To entitle insane woman to damages from carnal intercourse to which she consented, it must be shown that she was so mentally diseased at time as to have no will to oppose act, and that defendant knew such fact, as required to convict him of rape under Pen. Code 1925, art. 1183.

**6. Rape ⚖️66—Evidence held insufficient to take to jury question whether plaintiff was so mentally diseased at time of alleged rape as to have no will to oppose act.**

In insane woman's action for rape, evidence *held* insufficient to take to jury question whether she was so mentally diseased at time as to have no will to oppose act, to which she consented.

**7. Evidence ⚖️317(2)—Hearsay testimony as to plaintiff's statements, after becoming insane, that defendant in action for rape was father of her child, held inadmissible.**

In insane woman's action for rape, hearsay testimony as to statements by plaintiff, after she became mentally unsound, that defendant was father of her child, *held* inadmissible.

**8. Rape ⚖️66—Evidence of opportunity to commit act complained of, because of intimate relations between plaintiff and defendant, held insufficient to take question to jury.**

In insane woman's action for rape, evidence that defendant had ample opportunity to commit act complained of, because of their intimate relations as physician and nurse conducting hospital work together, *held* insufficient to take case to jury as raising no more than surmise or suspicion that defendant committed such act.

**9. Libel and slander ⚖️123(1).**

Evidence *held* insufficient to take to jury question of slander in falsely accusing plaintiff of theft of property.

Appeal from District Court, Austin County; M. C. Jeffrey, Judge.

Action by Annie Maler, by her next friend, Barbara Maler, against T. G. Hill. Judgment for defendant, and plaintiff appeals. Affirmed.

C. G. Krueger, of Bellville, and C. H. Chernosky, of Houston, for appellant.

C. M. Kay, of Houston, and D. F. Rowe, of Laredo, for appellee.

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

PLEASANTS, C. J. This suit was brought by Barbara Maler, as next friend of Annie Maler, a person non compos mentis, against appellee to recover damages for the alleged rape and slander of Annie Maler by appellee.

The following is the substance of the material allegations of plaintiff's petition:

Annie Maler, who is the daughter of Barbara Maler, is a feme sole, 34 years old, and is now of unsound mind and confined in the State Insane Asylum at Austin, Tex. Prior to the time of her confinement in the asylum, she was a professional nurse and had established a reputation in the town of Sealy, where she lived, as an excellent and painstaking nurse, and was earning an average of $150 per month in the practice of her profession. In the year of 1917 she acquired property in the town of Sealy which she used as her home and as a hospital for the care of sick persons. In 1918 the appellee and his brother, both of whom claim to be physicians and surgeons, came to the town of Sealy and began the practice of medicine and surgery, and also established a hospital for the care and treatment of their patients. Soon thereafter appellee began visiting Annie Maler and urging her to close her hospital and take charge of the hospital which he and his brother were conducting, and telling her that he was her friend, and that she was one of the best nurses he had ever known, and that with her sweet disposition and skill as a nurse they together could make his hospital the largest and most successful of any outside of the large cities.

Annie Maler, while not of unsound mind at that time, did not have sufficient strength of mind to oppose and resist appellee, who was about 45 years old, strong mentally and physically, and having a great deal of personal magnetism, and who by protestations of love and promise of marriage finally induced her to close her hospital and take charge of appellee's, and to yield her body to him and permit him to have carnal intercourse with her. As a result of such intercourse, she became pregnant and sick in mind and body, and when she demanded that appellee carry out his promise and marry her to protect her good name, he refused and discharged her from her position as nurse in his hospital. All of appellee's professions of love, promises, and representations were made with the preconceived fraudulent purpose and design and intention of obtaining Annie Maler's consent to carnal intercourse with him, to gratify his animal passion, and also to destroy her good name and reputation, and thus eliminate her from nursing and caring for the sick in competition with appellee's hospital.

It is then alleged that after appellee discharged Annie Maler from his hospital, he falsely, wantonly, willfully, and maliciously accused her of theft of property, and knowing such charge was untrue swore out a search warrant and had her home searched for the alleged stolen property. By these false charges against the honesty and integrity of Annie Maler, she was exposed to hatred and contempt and public ridicule, "all of which greatly humiliated her, agitated her mind, excited her mental faculties, and completely dethroned her mind to the extent that she became insane, although not violently insane."

It is next alleged that after the birth of her child Annie Maler openly and freely told all persons who inquired that appellee was the father of the child; and in order to relieve himself of the embarrassment caused by such declarations, the appellee notwithstanding his knowledge of the facts that his mistreatment of her, as before described, caused her mental derangement, made a complaint against her in which he falsely charged that she was violently insane and should be restrained; and upon a hearing of such complaint so testified and procured a judgment, having her confined in the county jail and thereafter placed in the insane asylum. Appellant further alleged that at the time appellee had sexual intercourse with Annie Maler she was mentally so weak and dethroned of her mental faculties that she could not freely consent to such intercourse, and that appellee by having intercourse with her in her then condition of mind was guilty of rape. The petition prays for $25,000 actual and $25,000 exemplary damages.

The defendant answered by general demurrer and numerous special exceptions, the nature of which, in view of the conclusion we have reached as to the ground upon which this appeal should be determined, need not be stated. He further denied generally and specially all and each of the material allegations of the petition, and specially pleaded the statute of limitation of one year against plaintiff's cause of action based on the allegations of slander.

After hearing the evidence, the trial court instructed the jury to return a verdict in favor of defendant and upon the return of such verdict rendered judgment in accordance therewith.

The appellant first complains of the judgment on the ground that the trial court erred in refusing to permit her to introduce in evidence the deposition of the lunatic, Annie Maler; and, second, on the ground that the evidence raised the issue of liability on the part of defendant for the injuries alleged in plaintiff's petition, and the court was not authorized to take the case from the jury.

[1] The question of the competency of Annie Maler to testify in the case was one to be determined by the trial judge from all of the facts before him, and unless it appears from the record that he abused his discretion in refusing to admit her deposition, we are not

authorized to reverse his ruling. Mills v. Cook (Tex. Civ. App.) 57 S. W. 81.

[2] The insanity of Annie Maler at the time. her depositions which were offered in evidence were taken is not questioned, and while mental weakness or delusion might be held to affect the weight rather than the admissibility of the testimony of such witness, before the testimony can be admitted it must be shown that the witness understood and appreciated the sanctity of her oath.

[3, 4] The only evidence on this question was the testimony of a witness offered by appellant who testified that he went to Austin for the purpose of obtaining the depositions of the witness and was present when the depositions were taken, and that—

"From my conversation with her at the time I should judge that she had sufficient understanding to appreciate the nature of an oath, from the way she talked. I don't know why she should not, because when I left there and shook hands with her, she said: 'Tell Fannie if it takes every cent of money the rent I get off that place, to take care of that baby.' She was talking about her own baby. As soon as you talked about that baby, then she flies all to pieces. Up to that time, if you don't mention that child you can talk with her, but as sure as you mention that child, why it is all off."

Other portions of the testimony of this witness are set out in the judge's qualifications to plaintiff's bill of exceptions to his refusal to admit the depositions, and are as follows:

"As to how many trips I made in my attempt to get her deposition: I was there only one time before. I went there that time and did not get all of it; I got some, but not all of it, because she got excited. When the child was mentioned, she wouldn't want to talk about it. She got excited, and got mad. As to whether a person in that condition would understand an oath: When she quieted down, she would. If you talked about the child again, she would go all to pieces again; when you mention the child is when she would get excited and mad. She could come back to talking about people in Sealy, and get to talking easy again, and she would answer. You got spasmodic answers; you couldn't push that right through. She would get excited about it."

Again this witness testified:

"Whenever you talked about the child, she gets excited and flies all to pieces, and mad. As to whether it is to such an extent that she does not understand an oath, you have got to let her quiet down then."

There is no presumption that an insane person understands and appreciates the sanctity of an oath, and such understanding and appreciation cannot as a matter of law be inferred from the fact that the witness correctly and intelligently answers a number of questions, and the further fact that a person who was present thought or judged she understood the nature of an oath.

We cannot hold upon this showing that the trial judge abused his discretion in refusing to admit the depositions in evidence. We are also of opinion that the trial court did not err in instructing the jury to return a verdict in favor of the defendant.

[5] We find nothing in the record which rises to the dignity of evidence sufficient to raise the issue of appellee's rape of Annie Maler. We use the word "rape," because to entitle her to recover damages resulting from her alleged carnal intercourse with appellee, to which she consented, it must be shown that she was so mentally diseased at the time of the intercourse as to have no will to oppose the act, and if appellee knowing this to be her mental condition had carnal intercourse with her, he would be guilty of rape. Pen. Code 1925, art. 1183.

[6] Several witnesses gave it as their opinion that she did not have a very strong mind, was easily excited and easily persuaded, and one testified that if Annie Maler was asked to do anything wrong she hardly thought she would have sufficient will power to resist, and did not believe if "a man asked her for carnal intercourse she would have sufficient will power to resist that." The facts and circumstances upon which the opinions of these witnesses were based are not stated, except as to the witness Kastrop, who testified that he did considerable work for Annie Maler, painting and papering, and that from his observation she was not very strong minded and could be "out-argued and overreached." As a basis for this conclusion, he stated that when he was working for her he found it easy to induce her to change her opinion as to how the work should be done. He says:

"I found it easy when she wanted it one way and I told her that is not good, could talk her out of it right now. I did influence her to accede in the work there. Just told her it ought not to be done this way; it will cost more; you better have it done that way. It was no trouble to argue her out of it."

He further testified:

"She wanted me to do it in a certain way, and she had ideas of painting, and I advised her, from my experience as to being a paper hanger and painter as to what would be the best way to do it, and she submitted to it, just as I have stated. Once in a while you find people in my business who submit to it. As to whether I consider them all weak-minded and easily coerced and not knowing as to what they are doing, some of them are very easily persuaded, and some you can't persuade at all. Some say, 'I just want it that way,' and that settles it."

As alleged in the petition and shown by all of the evidence, Annie Maler, a graduate nurse, had been successfully practicing her profession in the town of Sealy and had acquired and was conducting a home and hospital of her own before appellee came to Sealy, and no word or act of hers indicating a diseased mind prior to the time that she became

pregnant is shown by the testimony of any witness. The opinion of the one witness who testified that she did not believe that she had sufficient will power to resist a proposal for carnal intercourse was clearly formed in the "light of the afterglow" caused by her pregnancy.

[7, 8] The testimony that appellee is the father of her child is equally lacking in probative force. Aside from the hearsay testimony of statements of Annie Maler, made after she became mentally unsound and which was clearly inadmissible as evidence, the testimony goes no further than to show that because of their intimate relations as physician and nurse conducting hospital work together, appellee had ample opportunity to have had illicit intercourse with her. Viewing the evidence as a whole, we think it raises no more than a surmise or suspicion that appellee committed the wrongs complained of in plaintiff's petition, and in legal contemplation falls short of being evidence requiring the submission of the case to the jury. Joske v. Irvine, 91 Tex. 575, 44 S. W. 1059.

[9] In regard to alleged slander, all that the evidence shows is that when Annie Maler left appellee's hospital she took with her certain household goods which she once owned, but had sold to appellee. When appellee discovered that the goods were taken, he swore out a search warrant and recovered them from her possession. Annie Maler claimed that she took the goods because appellee had not paid her for them, but it is not shown that this claim was known to appellee when he swore out the warrant. No prosecution of Annie Maler for her alleged theft of the property is shown.

We do not think this evidence is sufficient to make a case of slander.

It follows that the judgment should be affirmed, and it is so ordered.

Affirmed.