**MARTIN et ux. v. MARTIN.**

No. 12670.

Court of Civil Appeals of Texas. Dallas.

April 8, 1939.

Rehearing Denied June 24, 1939.

W. N. Coombes and Z. E. Coombes, both of Dallas, for appellants.

Slay & Simon, of Fort Worth, for appellee.

LOONEY, Justice.

Mrs. Maggie Martin, appellee, wife of Henry G. Martin, who refused to join in the suit, sued J. Y. Martin (also known as Young Martin) and his wife, Laura, to recover the south 85 acres of a tract of 185 acres of land described in the pleadings. The suit was based upon an alleged equitable title, the contention of appellee being that appellants hold the land, impressed with a constructive trust in her favor. The petition is quite lengthy, but the substance of her allegations is: That prior to November 1, 1930, she and her husband, Henry Martin, owned and occupied the 185-acre tract, being their community homestead, against which the John Hancock Mutual Life Insurance Company held a valid mortgage lien to secure a note in the principal sum of $4,090; that the mortgagors (appellee and husband) having failed to pay the taxes due upon the land, the mortgagee accelerated the maturity of the indebtedness and requested the trustee, in the existing trust deed, to sell the property, as authorized therein, and accordingly the land was advertised, to sell on November 4, 1930. That Henry Martin, appellee's husband, and J. Y., or Young Martin, appellant, were brothers, that by reason of such relationship, appellee and her husband confided implicitly in appellant, and, because of a physical affliction that had existed for a number of years, the mind and memory of appellee's husband had become materially weakened and impaired, rendering him more susceptible to the influence of appellant; that the conditions confronting appellee and her husband, that is, the imminence of the sale and loss of their homestead, was a subject of discussion among different members of the Martin family, including appellant, resulting finally in a proposal by him, to the effect that, he would undertake to prevent the foreclosure sale of the property as advertised; that he, appellee, and her husband would all work together to pay off the loan, and, when accomplished, that appellee and husband would convey to appellant the north 100 acres of the 185-acre tract; that appellee and husband acquiesced in and agreed to this proposal; but appellant, conceiving the idea of acquiring for himself the legal title to the entire 185-acre tract, did nothing to prevent the foreclosure sale, allowed the sale to take place, and immediately thereafter, acquired title to the property by purchase from the Insurance Company (the Company having purchased the property at the trustee's sale), at a price far below its actual value, and thereafter conveyed same to his wife

for a nominal consideration. Believing that appellant had prevented foreclosure sale of the property, and being ignorant of the facts just detailed, appellee occupied the premises for several years, and paid, as she was able to do, different sums to appellant, to be applied on the loan, but later, by a ruse, appellant induced appellee to relinquish possession, on the representation that the property could be rented to a better advantage and more money realized therefrom to apply on the loan; that appellee did not learn of the true situation until in the fall of 1934, a short time before the institution of the present suit. She, therefore, sought recovery of the south 85-acre portion of the 185-acre tract, as described in the pleadings, also its reasonable rental value for the time its possession had been wrongfully withheld by appellants.

Appellants urged general and special exceptions to appellee's petition, also answered by a general denial, plea of not guilty, limitation of two and four years, the statute of fraud, and want of consideration for the alleged agreement.

The jury found that the understanding between appellee, her husband and appellant, Young Martin, as alleged by appellee, was entered into on or about November 1, 1930; that Young undertook to keep the Insurance Company from foreclosing on the land, and would pay off the loan against the 185-acre tract, appellee and her husband agreeing to deed Young the north 100 acres if he prevented foreclosure and paid off the loan. The jury also found that, at the time of the agreement, appellee's husband "did not have sufficient mind and memory to understand the nature and effect of his acts in transacting business"; they also found that the reasonable cash rental value of the 85-acre tract for the years 1934, 1935, 1936 and 1937 was $50 per month, and, further, that appellee did not learn that appellant, Young Martin, had a deed to the 185-acre tract until in the fall of 1934.

On these findings and the evidence, the court rendered judgment in favor of appellee for the 85-acre tract sued for, and authorized the issuance of a writ of possession; also awarded her damages against appellants in the sum of $2,250, costs of suit, and authorized the issuance of execution for the collection of same. Their motion for a new trial being overruled, appellants excepted, gave notice of and perfected this appeal.

The findings of the jury, in our opinion, were authorized by the evidence, which authorizes these conclusions, to wit: That the 185-acre tract in question, the homestead of appellee and husband on and prior to November 1, 1930, was encumbered with a mortgage in favor of John Hancock Mutual Life Insurance Company, default having been made in the payment of taxes upon the property, the mortgagee declared the indebtedness due, and had the property advertised to sell on November 4, 1930, under the terms of the trust deed. Young Martin was a brother of appellee's husband, in whom both appellee and her husband had great confidence, and, for a number of years prior to the date named, appellee's husband had been afflicted to such an extent that his memory was impaired and his mind weakened, rendering him all the more amenable to the wishes and susceptible to the influence of his brother Young. The threatened sale and loss of their homestead had been the subject of discussion between appellee, her. husband, his brother Young, and other members of the Martin family, in regard to the best means of preventing sale and loss of. the property, and, as the result, appellant proposed that he would undertake to prevent the foreclosure sale, that he, appellee and her family would work along together to the end of paying off the loan, and that, when accomplished, appellee and her husband would deed him the north 100 acres of the 185-acre tract, they, appellee and husband, retaining the south 85-acre tract as their homestead. This proposal was agreed to by appellee and her husband, but, with the view of getting title to the entire tract, Young made no effort to prevent the foreclosure sale, permitted the land to be sold November 4, 1930, as advertised, the Insurance Company becoming the purchaser, and that, within a few days after the sale, Young purchased the 185-acre tract from the Insurance Company at a price materially less than the market value of the property, and materially less than the market value of the north 100 acres thereof; and later, in February, 1934, conveyed the land to his wife, Laura, for the recited consideration of $10 and love and affection. Appellant failed to tell appellee, or any member of her family that he did not prevent the foreclosure sale, or that it had been sold, and that he had subsequently purchased same from the Insurance Company. Being ignorant of these facts, ap-

pellee remained upon the land until in February, 1933, paying to Young, from the proceeds of the farm, such amounts as she was able, and that, in February, 1933, he represented to appellee and her family that it would be better for them to give possession of the place, as, thereby, he would be enabled to raise more money to pay on the loan, and, in response to the request, appellee and family yielded possession of the place. Some time later, hearing that the loan had been paid off, she went to Young and asked if he was ready to accept a deed from her and her husband to the north 100 acres and permit them to go back into possession of the south 85 acres, according to the agreement. Appellant, at this time, did not deny having made the agreement, as alleged, but stated he had been out so much money that he was unwilling to comply with same, and, in this connection, denied that the loan had been paid off. Thereupon, appellee investigated the matter and, for the first time, ascertained that the land was sold under the trust deed on November 4, 1930, was bought in by the Insurance Company, later was purchased by Young Martin from the Insurance Company, and, still later, was conveyed by him to his wife for a nominal consideration.

Appellants say that the court erred in overruling their general demurrer to appellee's petition, in that, the agreement as alleged (the basis of the action) was unilateral and without consideration. We do not think so. The consideration moving to each party is clearly indicated, that is to say, based upon the proposal of appellant to prevent foreclosure sale of the property and pay off the loan, appellee and her husband agreed to convey to him the north 100 acres of the 185-acre tract. The petition alleged a state of facts, clearly showing that, in the rather distressful and embarrassing circumstances with which appellee and her husband were confronted, appellant, capitalizing his confidential relationship with the parties, was enabled to acquire title to the entire 185-acre tract, including the 85-acre tract, which, under the allegations, is impressed with a constructive trust.

The equitable doctrine of constructive trust, as defined in Pomeroy 4th Ed., Sec. 1053, has often been applied by the courts of this state, and was quoted with approval by the Commission of Appeals in Hill et al. v. Stampfli et al., 290 S.W. 522, 524, as follows: "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust. The forms and varieties of these trusts, which are termed ex maleficio or ex delicto, are practically without limit. The principle is applied wherever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoer."

Also see Jewell v. Hart, Tex.Civ.App., 244 S.W. 827, and Miller v. Carlton, 2 Tex. Civ.App. 382, 21 S.W. 605. A case strikingly similar, is that of Urquhart v. Belloni, 57 Or. 314, 111 P. 692, 694, from the Supreme Court of Oregon. Holding in favor of the plaintiff, on the theory of a constructive trust, the court said: "By delaying payment until the legal title became vested in the state, and then securing from the state a conveyance of the entire tract to himself, he secured a legal title to land that he admits he had not bought, and to which he had no right, and this was done in violation of his covenant to preserve and protect plaintiff's legal title to the remainder of the tract. By his acts he has made himself ex maleficio plaintiff's trustee of the title to the 111 acres of land * * * and in equity he is bound upon demand to reconvey the same." For reasons stated, we do not think the court erred in overruling the general demurrer.

Appellant's proposition No. 2 is based upon assignments of error Nos. 2, 3, 4, 5 and 6, complaining of the action of the court in refusing to sustain special exceptions to appellee's petition (a) because the nature of Henry Martin's mental deficiencies relied upon was not alleged, and (b) because the action as alleged, if any, arose

more than four years prior to the institution of the suit, hence, was barred by limitation.

■ Notwithstanding the duplicitous nature of the proposition, we have considered the points raised. We think the mental weakness of Henry Martin was alleged with sufficient particularity; in fact, the reference to his mental incapacity, seemingly, was made for no purpose other than as a matter of inducement, illustrative, together with other facts, of the condition of his mind when appellant is alleged to have made the proposal, the violation of which forms the basis of this suit. No contract was sought to be set aside by reason of Henry Martin's mental weakness, or by reason of his being overreached; in fact, the agreement, allegedly so easily obtained by appellant, by reason of the existing facts and circumstances, is sought to be enforced just as it is alleged to have been made. So, we overrule all assignments and propositions involving the question of the mental weakness of Henry Martin, regarding that fact as purely evidentiary, bearing upon the conditions existing when it is alleged that, appellant fraudulently conceived the idea of becoming the owner of the entire 185-acre tract.

■ The four years' statute of limitation insisted upon by appellants is not applicable. The suit, instituted for the purpose of establishing and enforcing a constructive trust upon, and the recovery of, the 85-acre tract of land, essentially is an action of trespass to try title. See 41 Tex. Jur. 454, Sec. 2, and authorities cited. It is well settled in this state that plaintiff's title, whether legal or equitable, will support an action of trespass to try title, and that, the four years' statute of limitation has no application to such an action. See Carl v. Settegast, Tex.Com.App., 237 S.W. 238; Burney v. Burney, Tex.Civ.App., 261 S.W. 182; McBride v. Loomis, Tex.Com. App., 212 S.W. 480, and Jewell v. Hart, Tex.Civ.App., 244 S.W. 827, 829. The latter case is directly in point, in the disposition of which, the court used the following pertinent language: "Passing to a consideration of the court's action in sustaining the special exception to the effect that the petition upon its face shows that the cause of action is barred by the two and four years' statutes of limitation, this was error for the reason that these statutes have no application. The suit is to recover an undivided seven-ninths' interest in the land and for partition based upon an equitable title under a constructive trust. In order to recover, no equitable aid for the removal of some impediment upon the title caused by a judgment or written instrument is necessary. Under the authorities, the statutes upon which the exception is based have no application. The statutes relating to actions to recover realty in adverse possession apply." (Citing authorities). We, therefore, overrule the contention that appellee's petition exhibited a cause of action barred by the four years' statute of limitation; and, as the jury found that appellee did not learn of the acquisition of title to the land by appellant until in the fall of 1934 (a short time before the institution of this suit), we hold that, on the facts, appellee's cause of action was not barred; therefore, overrule all assignments and propositions pertaining to the question of limitation.

■ In proposition No. 3, appellants contend that the court erred in not rendering judgment in their favor, specifying several reasons for such contention, among others,—that appellee's cause of action was barred by limitation. We have just disposed of the question of limitation, hence, overrule this contention. They also contend that judgment should have been rendered in their favor for the reason that appellee and her husband had parted with title to the 185-acre tract, prior to the alleged agreement; in other words, that title to the land was outstanding in another. This contention is based upon the fact that, on May 16, 1930, appellee and her husband conveyed the 185-acre tract to Florence Martin (sister of Henry) by a warranty deed, upon the recited consideration of $18,500; $10,000 cash, a note for $3,845, due five years after date, and subject to the debt and lien owned and held by the Insurance Company. The testimony of Florence Martin shows indisputably that the conveyance was for the dual purpose of securing her in the payment of $300 she had advanced to Henry, and to enable her, on behalf of her brother, to refinance the loan. She had secured the approval of a loan on the land by another loan company, but, at that juncture, the refinancing was vetoed by appellant, who said "No, do something else." The land being the homestead of appellee and her family, the conveyance to Florence Martin, executed under the circumstances and for the purposes named, being void, under a plain provision of the Constitution (See Sec. 50 of Art. 16, Vernon's Ann.St.), did not constitute an

outstanding title. We, therefore, overrule the contention of appellants that appellee and husband had parted with title to the property prior to the alleged agreement of about November 1, 1930.

In their proposition No. 4, appellants say, "The defendants were entitled to have their theory of the case and their defense submitted to the jury." This proposition is germane to assignments Nos. 11 to 17, inclusive, that complain of the refusal of the court to submit appellants' requested issues Nos. 1 to 7, inclusive. The record discloses that, the requested issues were on different phases of the evidence. In the abstract, the proposition presents a correct proposition of law, but, construed in connection with the assignments to which it is germane, presenting error in refusing requested issues on diverse matters, it is altogether multifarious, and violates the rules of court. In a similar situation presented in Allison v. Campbell, Tex.Civ.App., 35 S.W.2d 776, 777, the Waco Court correctly stated the rule, with citation of authorities, as follows: "Our courts uniformly hold that a party cannot present, under one general proposition, a number of assignments of error presenting entirely different and disconnected matters. This method of briefing makes it very onerous upon the appellate courts and extremely difficult to determine the real complaint of the party appealing, and such propositions are not entitled to any consideration by the appellate courts. Ferguson v. Washburn (Tex.Civ.App.) 4 S.W.2d 574 (error dismissed); Standard Accident Ins. Co. v. Williams (Tex.Civ.App.) 4 S.W.2d 1023; Id., (Tex.Com.App.) 14 S.W. 2d 1015; Miks v. Leath (Tex.Civ.App.) 26 S.W.2d 726". Although, under the rules, we were not required to consider the abstract and multifarious proposition, yet, we have carefully examined the entire record with reference to the assignments to which the proposition is alleged to be germane, and, failing to find reversible error, the proposition and assignments are overruled.

In their sixth proposition, appellants contend that the court erred in refusing to permit Henry Martin, husband of appellee, to testify, on the ground of mental incompetency. When the witness was offered by appellant, he was promptly challenged by appellee on the ground of incompetency, and thereupon he was subjected to a voir dire examination by the court, apart from the jury, after which, the court sustained the challenge and refused to permit the witness to testify. Aside from the facts developed on the voir dire examination, there was an abundance of evidence given by other witnesses that, in our opinion, established with reasonable certainty that Henry Martin was incompetent to testify. His competency was a question of fact for the determination of the court, and, unless an abuse of discretion is shown, the ruling is final. In the case of Maler v. Hill, Tex.Civ.App., 285 S. W. 638, 639, the plaintiff was alleged to be a non compos mentis. Attempt was made to introduce in evidence plaintiff's deposition, and it was excluded on the ground that the witness was incompetent. With reference to this matter, the court of civil appeals said: "The question of the competency of Annie Maler to testify in the case was one to be determined by the trial judge from all of the facts before him, and unless it appears from the record that he abused his discretion in refusing to admit her deposition, we are not authorized to reverse his ruling. Mills v. Cook, (Tex. Civ.App.) 57 S.W. 81". To the same effect, see Nations v. State, 91 Tex.Cr.R. 112, 237 S.W. 570, and O'Brien v. First State Bank & Trust Co., Tex.Civ.App., 241 S.W. 556. We do not think an abuse of discretion was shown, besides, appellants wholly failed to show what Henry Martin's testimony would have been, had he been permitted to testify. We, therefore, overrule the proposition under consideration and the assignment pertaining thereto.

In their seventh proposition, appellants say that, as Mrs. Laura Martin being a married woman, the court erred in rendering a personal judgment against her for damages growing out of the retention of the 85-acre tract. The recovery of damages, permitted by the court, was for the wrongful withholding from appellee and her husband of the 85-acre tract in question. That a wife may be held liable as a joint tort-feasor with her husband, is well settled in this state. See Speer, 3rd Ed., p. 702, Sec. 573, and Taylor v. Stephens, 17 Tex.Civ.App. 36, 42 S.W. 1048, writ refused. We therefore overrule this proposition and the assignment upon which it is based.

We have carefully examined and considered all propositions and assignments urged by appellants for reversal, but, failing to find reversible error, the judgment of the court below is affirmed.

Affirmed.