### HALL et al. v. MILLER et ux.

### No. 10826.

Court of Civil Appeals of Texas. San Antonio.

Jan. 8, 1941.

Rehearing Denied Feb. 5, 1941.

Lloyd & Lloyd and R. R. Mullen, Jr., all of Alice, for appellants.

Russell B. Wine, of San Antonio, Thos. H. Ward, of Laredo, and Frank T. Morrill and Perkins & Floyd, all of Alice, for appellees.

NORVELL, Justice.

This is an appeal from a judgment based upon a special issue verdict whereby appellees, J. William Miller and Mary C. Miller, husband and wife, recovered the title and possession of approximately 80 acres of land, being Lot No. 18, Block No. 11, of lands adjoining the Townsite of La Gloria, in Jim Wells County, Texas. The judgment also removed clouds cast upon the appellees' title by a certain contract and deed bearing dates of October 23d and October 16th of the year 1930, respectively.

Defendants below were Midwest Building and Investment Company, E. S. Gates, president of the Company, Patrick Magee and Albert A. Hall. Hall was the named grantee in the deed above mentioned and brings the case here.

As analyzed by us, the controlling question presented is one of limitation. Appellant urges certain assignments complaining of the admission of testimony and the manner in which the case was submitted to the jury. We have carefully examined these assignments and are of the opinion that an error necessitating a reversal of the case is not shown.

According to the jury findings, which are supported by the evidence, supplemented by such facts as were uncontroverted in the trial court, it appears that appellees were the victims of a fraudulent conspiracy on the part of the defendants, which had for its purpose the unlawful acquisition of the title to the property in dispute without the payment òf a consideration therefor.

Prior to the month of October, 1930, appellees, who were then approximately seventy years of age, owned the 80 acres involved. They resided in San Antonio, Texas, and about the month of October of 1930, Patrick Magee, as agent of Midwest Building and Investment Company, entered into negotiations with them con-

cerning the exchange of the property for certain corporate shares and a small amount of cash.

These negotiations culminated in written agreement whereby the Midwest Building and Investment Company agreed to deliver to appellees $3,000 in shares of the National Portland Cement Company and $520 in cash for the property. The investment company further agreed to expend $480 in clearing the property. It was apparently contemplated that after the clearing operations had been completed, the property would be sold for $50 an acre or more, for the benefit of appellees. The contract is somewhat unusual and the jury in effect found that it was simply a part of a fraudulent device to obtain a deed to appellees' property. About the time the contract was signed, appellees also executed a deed conveying the property to appellant Hall. This deed bears date of October 16, 1930, but evidently, according to the jury's findings, its execution was secured by Magee at the time the contract was signed, under a representation that it was a contract or a part of the contract under which appellees were to convert their property into cash and corporate stocks. Appellees testified positively that they had not intended to execute a deed, and did not know they had done so until long after the transaction. The jury findings were in accordance with appellees' version of the transaction.

Hall denied that he had any connection with Magee, Gates or the Midwest Building and Investment Company, but the jury found that he had notice of the fraud practiced upon appellees, and was in fact a party to the conspiracy which resulted in appellees executing the deed for which they received nothing of value. These jury findings have support in the evidence and are therefore binding upon this Court.

Hall filed the deed for record in the office of the County Clerk of Jim Wells County on December 6, 1930. It also appears that during the year 1931 Hall called upon the appellees and informed them that he had purchased the land. By letter, dated October 23, 1931, Hall informed the Millers that he claimed the 80 acres clear of any claim they might have against Gates and stated that he intended to hold them responsible in the event damages should occur to him as a re-

sult of the Millers' claims against the property. The record shows that Miller's attorney also had some correspondence with Hall about the property during the year 1931.

It seems that prior to the transaction whereby Hall obtained a deed to the property, the Millers leased the land to one L. A. Burdett under an agreement whereby the lessee was to pay the taxes upon the property as rent. Burdett did not testify upon the trial. His son, Clifford, was called as a witness, however, and testified that he was in actual possession of the property, holding under his father, and that he had never heard of Mr. Hall until about a year before the trial, which took place in November, 1939.

Appellees present in effect three theories of recovery and the case may be best discussed from the standpoint of these contentions which are:

1. That because of the circumstances under which the deed was executed and delivered it was an absolute nullity and passed no title to Hall.

2. That, if the deed did pass title, it should be cancelled and set aside because of the fraud practiced upon appellees. As a corollary to this position, appellees assert that a rescission is not barred by limitation, as the issue of limitation involved matters of fact, and appellant failed to request that the same be submitted to the jury, thereby waiving the defense of limitation.

3. That if the deed served to convey title to Hall, he took as a trustee ex maleficio, subject to the equitable interests of appellees.

Appellees' original petition was not filed until September 6, 1938, almost eight years after the transaction which gave rise to the deed, and appellant pleaded in bar the four-year statute of limitations, Article 5529, Vernon's Ann.Tex.Civ.Stats. He also pleaded Articles 5507 and 5509, Vernon's Ann.Tex.Civ.Stats., the three and five-year real property statutes of limitations. As to the last two articles pleaded, there was no evidence introduced upon the trial which would support a holding that appellees' action was barred by the limitation statutes relating to causes for the recovery of real property.

We are unable to agree with appellees as to the correctness of their first contention—that the deed is a nullity.

There are reported cases in which a deed whose execution and delivery is procured by fraud is described as being void. In such cases it is generally found that a question of innocent purchaser or limitation is not involved, and there was therefore no necessity for making a distinction between a "void" and a "voidable" conveyance. The case of Ramirez v. Bell, Tex.Civ.App., 298 S.W. 924, writ refused, opinion by' Chief Justice McClendon, seems controlling here. In that case it was pointed out that the fraudulent procurement of a genuine signature to an instrument does not constitute forgery, and such an instrument is effective as a conveyance of the legal title at least, until set aside or avoided by the defrauded person. A suit brought for the purpose of cancelling a written instrument is governed by Article 5529 providing that "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward." We believe that the record in this case shows as a matter of law that after the transactions and letters of 1931, appellees knew or by the exercise of reasonable diligence could have known that a fraud had been perpetrated upon them, and therefore the statute of limitations commenced running. Glenn v. Steele, Tex.Sup., 61 S.W.2d 810. We therefore hold that any right of rescission which appellees may have had is barred by limitation, according to the undisputed testimony in the record. Appellees' second contention advanced in support of the judgment is not well taken.

█ Appellees' third contention in support of an affirmance of the trial court's judgment is based upon the theory of a constructive trust. In the case of Hendrix v. Nunn, 46 Tex. 141, it was pointed out that it would be fallacious to suppose that a court of equity would construct a ·trust in every case in which there was fraud, even though the fraud would be sufficient to annul a contract by way of cancellation. However, the record here, including the jury's findings, presents a set of facts under which a court of equity must necessarily raise a trust relationship under accepted equitable principles. The · jury verdict supports the theory that appellees' signatures to the deed in question were secured as a result of a fraudulent trick or scheme designedly planned to accomplish that result. We have something more in this case than the mere breach of a contract or covenant to pay a consideration. As the jury found that Hall was a member of the conspiracy entered into for the accomplishment of this unlawful result and had knowledge of the fraud perpetrated upon appellees, it follows that he took title ex maleficio; that he held the legal title for the benefit of appellees who retained the equity. Faville v. Robinson, 111 Tex. 48, 227 S.W. 938; Martin v. Martin, Tex. Civ.App., 130 S.W.2d 863; Pomeroy's Equity Jurisprudence, 4th Ed., § 1053; 42 Tex.Jur. p. 655, § 50; 26 R.C.L. p. 1236, § 83.

█ The interest of the cestui que trust under a constructive trust is an equitable title and not a mere equitable right. An action of trespass to try title may be maintained upon such an equitable title against the holder of the legal title without first setting aside the instrument giving rise to the legal title. Schuyler v. Lacy, Tex.Civ.App., 79 S.W.2d 901; Jewell v. Hart, Tex.Civ.App., 244 S.W. 827.

In Carl v. Settegast, Tex.Com.App., 237 S.W. 238, 241, Judge McClendon, then a member of the Commission of Appeals, said: "It is now well settled upon authority in this state that the test whether an action be one to recover real estate, within the express exception to this article [5529], is whether the title asserted by plaintiff, whether legal or equitable, will support an action in trespass to try title. In determining this question the mere form in which the action is brought is not material. The authorities relied upon by defendants are those the facts of which bring them within the principles announced in McCampbell · v. Durst, 15 Tex.Civ.App. 522, 40 S.W. 315, in which Judge Williams very ably discusses the question here presented. It is there pointed out that, if, to show title in the land sued for, the plaintiff must first invoke ·the equitable powers of the court to set aside or reform some deed or other written instrument or judgment, not absolutely void as to the plaintiff, the action is not one to recover real estate within the terms of the exception to the four-year statute. On the other hand, it has been repeatedly held that where plaintiff's action rests upon an equitable title, to assert which does not require the aid of a court of equity to remove the impediment to such title caused by some written instrument or

judgment, the action is one for the recovery of real estate, and the four-year statute of limitations does not apply. This doctrine is established by the following cases: Stafford v. Stafford, 96 Tex. 106, 70 S.W. 75; Gilmore v. O'Neil, 107 Tex. 18, 173 S.W. 203; Home [Inv.] Co. v. Strange, 109 Tex. 342, 195 S.W. 849, 204 S.W. 314, 207 S.W. 307; Rutherford v. Carr, 99 Tex. 101, 87 S.W. 815; Bell County v. Felts (Tex.Civ.App.) 120 S.W. 1065." See also Jewell v. Hart and Martin v. Martin, supra.

We therefore hold that Article 5529 is not applicable to appellees' pleaded cause of action based upon the theory of a constructive trust. The applicable limitation statutes are those relating to suits for the recovery of real estate, and, as above pointed out, appellant failed to show such possession as would comply with the provisions of the three and five-year statutes. Articles 5507 and 5509, supra. The trial court correctly entered judgment for appellees, and its judgment is accordingly affirmed.

### On Motion for Rehearing.

Appellants' motion for rehearing is overruled. The authorities cited in our original opinion substantiate our holding that a constructive trust arose out of the transaction here involved. In Ruling Case Law it is said: "It is a well settled general rule that if one person obtains the legal title to property, not only by fraud, or by violation of confidence of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner." 26 R.C.L. 1236.

In support of the text, the case of Drury v. Cross, 7 Wall. 299, 305, 19 L.Ed. 40, is cited. In that case the Supreme Court of the United States held that equity would raise a constructive trust in property when the legal title thereto had been secured by means of fraudulent scheme or device. That honorable Court said:

"The scheme to acquire the property of this corporation was, in its inception, fraudulent, and every step in the progress of its execution was necessarily stamped with the same character. * * * The fruits of such an adventure cannot be enjoyed by the parties concerned in it. * * *

"Cross, Luddington, and Scott [the defendants] must be held liable as trustees * * *."

Motion overruled.