**SNYDER et al. v. CITIZENS STATE BANK et al.**

No. 11672.

Court of Civil Appeals of Texas. Galveston.
Dec. 21, 1944.

Rehearings Denied Jan. 11, 1945.

On Motion to Correct Opinion
Jan. 24, 1945.

———◆———

Richard H. Burks, E. H. Suhr, and Bryan, Suhr & Bering, all of Houston, for Snyder et vir.

L. Edward Mooney, of Houston, for Traweek et ux.

Lewis & Knipp and Ernest A. Knipp, all of Houston, for Binford.

MONTEITH, Chief Justice.

This suit was brought by Lillie Violet Snyder and her husband in statutory form of trespass to try title, for the recovery of the title and possession from M. B. Traweek and wife, Zoie Traweek, of two tracts of, respectively, 108.67 and 4.31 acres of land out of the H. Decrow Survey; for the recovery from T. A. Binford of a tract of 89.23 acres of land in the Wiley Smith Survey, all in Harris County, Texas, and for the recovery from E. C. Carnes of all of said lands. Defendants, T. A. Binford and M. B. Traweek and wife, Zoie Traweek, answered by defensive pleas and by cross action in form of trespass to try title. They pled specially the 3, 5 and 10 years statutes of limitations. By trial amendment, T. A. Binford alleged that he had purchased said 89.23 acres of land out of the Wiley Smith Survey from M. B. Traweek and Zoie Traweek for value and without notice of the claim of Mrs. Snyder thereto; that Mrs. Snyder had expressly ratified and confirmed the acts of E. C. Carnes in conveying said land to Zoie Traweek, and that she was estopped from setting up want of authority in E. C. Carnes to convey said land. He specially pled the two and four year statutes of limitation. No answer was filed by defendant E. C. Carnes.

The jury found in substance:

(1) That Mrs. Snyder executed the deeds conveying the land to E. C. Carnes for the "sole purpose of enabling him to sell" the land.

(2) That she instructed Carnes to sell the land "only for cash."

(3) That M. B. Traweek knew that Mrs. Snyder had an interest in this land at the time of the delivery of the deeds from E. C. Carnes to Mrs. Traweek, conveying this land to her.

(4) M. B. Traweek knew that Mrs. Snyder had instructed Carnes to sell the land "only for cash" at the time the deeds thereto were delivered to Mrs. Zoie Traweek.

(5) That Mrs. Snyder did not know at the time the deeds from Carnes to Mrs. Traweek were delivered that Carnes was trading said land for stock in the Gold Mining Company.

(6) That Mrs. Snyder did not accept the stock after she learned that Carnes had traded the land for it.

(7) That T. A. Binford knew prior to and at the time he purchased the 89.23 acre tract of land from the Traweeks that Mrs. Snyder had an interest therein.

(8) That T. A. Binford knew prior to and at the time he purchased the 89.23 acre tract of land from the Traweeks that Mrs. Snyder had instructed Carnes to sell the land "only for cash."

(9) That T. A. Binford did not have peaceable and adverse possession of said land for a period of three years.

(10) That Mrs. Snyder did not authorize Carnes to file the suit for the recovery of the land in 1935 and to prosecute it for her benefit.

(11) That the words, acts and conduct of Mrs. Snyder prior to the date T. A. Binford paid the $3000 to M. B. Traweek were not such as to lead an ordinarily prudent person to believe that she was not

then asserting any title to the 89.23 acres of land.

(12) T. A. Binford failed to prove payment of taxes for five years. There was no evidence of ten years adverse possession by him.

Based on the answers to the special issues submitted judgment was rendered that plaintiff, Lillie Violet Snyder, recover from all defendants the title and possession of said tracts of 108.67 and 4.31 acres of land out of the H. Decrow Survey. The motion of T. A. Binford for judgment non obstante veredicto was granted by the trial court and judgment was rendered in his favor and against plaintiff for the title and possession of the 89.23 tract of land out of the Wiley Smith Survey.

The Snyders concede in their brief that they have no equitable title to the tract of 20.84 acres of land out of said 89.23 acre tract in the Wiley Smith Survey which was conveyed by Mrs. Snyder to E. C. Carnes by deed dated July 16, 1934, and agree that judgment should have been rendered in favor of T. A. Binford for this tract of land.

The plaintiff herein, Lillie Violet Snyder, was the wife of T. R. Wunsche, who died in November, 1933. In December, 1933, E. C. Carnes called upon her at her home on the 89.23 acre tract in the Wiley Smith Survey for the stated purpose of selling her a monument for the grave of her deceased husband. She informed him at that time that she had no funds with which to purchase a monument but that she owned interests in certain lands in Harris County, Texas, with other parties, which she would like to sell. She stated to Carnes, however, that it would be necessary to "straighten out" the title to said property, as she expressed it, before the land could be sold. Carnes informed her that he had known her husband and that he would "straighten it out" for her. At his suggestion, plaintiff executed and delivered to him a power of attorney coupled with an interest in the land, authorizing him to have said lands partitioned for her. Acting thereunder, he employed an attorney who filed suit and secured a partition of the lands in which Mrs. Snyder, then Mrs. Wunsche, had an interest. In said partition the three tracts of, respectively, 108.67 and 4.31 acres in the Decrow Survey, and the tract of 89.23 acres in the Wiley Smith Survey, were set aside to plaintiff. Out of other land set aside to Mrs. Snyder in said partition a 27.40 tract was set aside to E. C. Carnes and a tract of 27.40 acres was set aside to the attorney employed by him to bring said partition suit, as their fees under said power of attorney.

On July 16, 1934, Mrs. Snyder conveyed to E. C. Carnes 20.84 acres of land out of said 89.23 acre tract in the Wiley Smith Survey. She testified that this conveyance was made with the understanding that Carnes would convey the 27.40 acre tract of land acquired by him under said powers of attorney to her. Carnes did not carry out this alleged agreement but later conveyed said 27.40 acre tract to Mrs. Zoie Traweek.

Later E. C. Carnes informed plaintiff that he had found a purchaser for the three tracts of land involved in this suit for the sum of $26,000 cash, and at his suggestion she transferred to him 68.39 acres of land, the balance of said 89.23 acre tract of land in the Wiley Smith Survey, and the tracts of 108.67 and 4.31 acres in the H. Decrow Survey in order that he might consummate said sale for her. By deeds dated January 18, 1935, E. C. Carnes conveyed 89.23 acres of land in the Wiley Smith Survey, being the two tracts of 68.39 and 20.84 acres of land out of said Survey, and the two tracts of 108.67 and 4.31 acres of land in the H. Decrow Survey to Mrs. Zoie Traweek for a recited consideration in each deed of $10 and other valuable considerations. Mrs. Snyder did not know that Carnes had conveyed this land to Mrs. Traweek and that he had accepted stock in a gold mining corporation in consideration therefor. She testified that, in 1940, Carnes for the first time suggested that she should file suit for the recovery of this land and that she then asked M. B. Traweek whether he had paid Carnes any money for the land and that he had told her at that time that he had not. By deed dated April 10, 1935, Mrs. Zoie Traweek and her husband, M. B. Traweek, conveyed said 89.23 acres of land in the Wiley Smith Survey to T. A. Binford.

E. C. Carnes testified that before he sold any of said land to Mrs. Zoie Traweek the terms of the sale were discussed at a meeting at which he, M. B. Traweek and Mrs. Zoie Traweek and T. A. Binford were present and that he informed them at this meeting that he held said land in trust for Mrs. Snyder, then Wunsche, and that he was only authorized to sell it for the sum of $26,000 in cash. He testified that, prior to that time and prior to the time the land was conveyed to T. A. Binford by Mrs. Zoie

Traweek and M. B. Traweek, he had told Binford that he held said land in trust for Mrs. Wunsche and that he was authorized to sell it for cash only.

It is undisputed that E. C. Carnes accepted, as a consideration for the sale of said land to Mrs. Traweek, 26,000 shares of stock in the Crown Consolidated Mining Company, an Arizona mining corporation, in which M. B. Traweek and T. A. Binford each owned 250,000 shares. The corporation had an authorized capital of five or six million shares of a par value of $1 per share. E. C. Carnes testified that he had attempted to sell said stock but that he could not get an offer for it. None of this stock was ever given to or received by the plaintiff, Mrs. Snyder, and it is undisputed that she has never received any consideration for the sale of said land.

The record shows that Mrs. Snyder had gone only to the fourth grade in the public school. She testified that she could not read very well; that she did not know what the deeds she had signed at the suggestion of E. C. Carnes stated, and that she did not know what stock was.

A short time after plaintiff had executed and delivered the deeds to said land to E. C. Carnes, M. B. Traweek sent a truck to her home on the 89.23 acre tract of land, which had been conveyed to T. A. Binford, and moved her to an apartment in Houston, owned by him. She later secured employment in his son's laundry. She lived in his apartment from 1935 to 1939. During this time she was charged no rent and she paid no rent therefor.

By instrument dated May 24, 1935, plaintiff, for a recited consideration of $10, executed with Carnes and delivered to T. A. Binford a quitclaim deed to said 89.23 acres of land. She testified that she did not know what the instrument was, and that she received no consideration therefor, but that she had signed said paper because E. C. Carnes had brought it to her and asked her to sign it and because she had implicit confidence in him. She testified that, at the time she signed the quitclaim deed to Binford and subsequent thereto, she had asked Carnes where her money for the land was and that he had told her it would take time to get it.

Appellee, T. A. Binford, and appellants, M. B. Traweek and Zoie Traweek, under appropriate points, base their appeal on three main propositions.

They contend: (1) That the formal allegations in trespass to try title on which plaintiffs rely, will not support the judgment rendered herein engrafting a trust on the deeds executed by Lillie Violet Snyder, then Wunsche, to E. C. Carnes by parol evidence showing that Carnes was Mrs. Snyder's agent and that he was authorized by her to convey said land only for cash; (2) that appellant's, Mrs. Snyder's, remedy herein is limited to a suit for cancellation of said deeds and that a suit for the recovery of said land is not. available to her as a remedy; and (3) that parol evidence is not admissible to prove that the deed from Mrs. Snyder, then Wunsche, to E. C. Carnes was delivered to him for the sole purpose of enabling him to sell the land for appellant for cash only.

It is a well settled general rule in this State that if one person obtains the legal title to property, not only by fraud, or by violation of confidence of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of one who is in good conscience entitled to it and who is considered in equity as the beneficial owner. Hall v. Miller, Tex.Civ.App., 147 S.W.2d 266; 26 Ruling Case Law, 1236.

It is also the settled law in Texas that the interest of the cestui que trust under a constructive trust is an equitable title to and not a mere equitable right in the property involved. Hall v. Miller, Tex. Civ.App., 147 S.W.2d 266, supra.

The record in this case, including the findings of the jury, clearly presents a state of facts under which a trust relationship under equitable principles was established in favor of Mrs. Snyder. The jury found on what we deem to be sufficient evidence that she conveyed the land involved herein to E. C. Carnes for the sole purpose of enabling him to sell it for her for cash; that the Traweeks and Binford knew, before the land was conveyed to them, that Mrs. Snyder had an interest therein and that she had conveyed it to Carnes with the instruction that he was to sell it for cash only. It is undisputed that Carnes took stock of doubtful value in a mining venture in payment therefor and

that, in so doing, he had repudiated his obligation to Mrs. Snyder. It is also undisputed that Mrs. Snyder did not accept the stock and that she had received nothing for her land. It follows that Carnes took the legal title to said land for the benefit of Mrs. Snyder who retained the equitable title thereto. And, the jury having found that said land had been transferred to the Traweeks and T. A. Binford with knowledge of these facts, they held the title thereto in trust for her.

While there has been much confusion in the decisions of this state as to whether it is necessary in trespass to try title suits to specially plead such facts as would show an equitable title before the party claiming under it could recover the land, the rule seems to be now well settled that, under the usual averments in a statutory action in trespass to try title, the plaintiff may prove and recover upon an equitable title flowing from a resulting trust, even though not specially pleaded. Southern Lumber Company et al. v. Kirby Lumber Corporation, 181 S.W.2d 859; Rodriquez v. Vallejo, 157 S.W.2d 172; King v. Hill, 138 Tex. 187, 157 S.W.2d 881, also 141 Tex. 294, 172 S.W.2d 298; Hall v. Miller, 147 S.W.2d 266; Austin et al. v. Austin et al., Tex.Sup. 182 S.W.2d 355.

Appellants' contention that parol evidence should not have been admitted to establish the trust under which the equitable title to said land became vested in Mrs. Snyder cannot be sustained.

The general rule that parol evidence is not admissible to destroy or vary the effect of the plain recitals in a deed is elementary. However, there is also a well established rule that parol evidence is admissible to show that a deed, though absolute on its face, is in fact a security for a debt and is, therefore, a mortgage; or that such a deed was executed and delivered on certain trusts not reduced to writing, and which the grantees promisèd to perform; and, that parol evidence is admissible to establish a resulting trust. Wallace v. Lewis, 60 Tex. 247; Small v. Brooks et al., 163 S.W.2d 236; Redwine v. Coleman, 71 S.W.2d 921; Texas Creosoting Co. v. Hartburg Lumber Co., Tex.Com. App., 16· S.W.2d 255; Austin et al. v. Austin et al., Tex.Sup., 182 S.W.2d 355; 42 Tex.Jur., 680-681.

Under above authorities plaintiffs' petition in this suit which contained the formal allegations of a trespass to try title action was a sufficient pleading upon which to both establish and recover upon her equitable title to the land involved herein.

Under their first point, plaintiffs assign error in the action of the trial court in rendering judgment in favor of T. A. Binford for the title and possession of the 68.39 acres of land in the Wiley Smith Survey notwithstanding the verdict of the jury.

It is the settled law in this state that, in determining in any case whether or not error has been committed by a trial court in rendering judgment non obstante veredicto, the testimony adduced on the trial must be considered in the light most favorable to the losing party. Conflicts in the testimony must be disregarded and every intendment reasonably deductible from the evidence must be indulged in favor of such party and against the judgment non obstante veredicto. Le Master v. Fort Transit Co., 138 Tex. 512, 160 S.W.2d 224; Happ v. Happ, 160 S.W. 2d 227; Anglin v. Cisco Mortgage Loan Co., 135 Tex. 188, 141 S.W.2d 935.

The trial court in the instant case, in its action in entering judgment in favor of Mrs. Snyder and against the Traweeks for the two tracts of 108.67 and 4.31 acres of land in the Decrow Survey, necessarily held that the record in the case, including the findings of the jury, presented a state of facts which vested the equitable title to said two tracts of land in Mrs. Snyder. Under the same state of facts, with the exception of the fact that Mrs. Snyder had, at the suggestion of E. C. Carnes, executed a quitclaim deed conveying her interest in said 89.23 acres of land to T. A. Binford, the trial court rendered judgment in favor of T. A. Binford and denied Mrs. Snyder recovery of the title to and possession of said 89.23 acres of land.

The trial court took this action in spite of the fact that the jury found, on what we deem sufficient evidence, that, before said 89.23 acre tract of land was conveyed to him by the Traweeks, T. A. Binford knew: (1) That Mrs. Snyder had an interest in said land; (2) that she had instructed E. C. Carnes to sell it only for cash; (3) that she did not authorize Carnes to file the suit on July 10, 1935 and prosecute it for her benefit and (4) that her

words, acts and conduct prior to the time Binford paid $3000 to Traweek on the purchase price of said land was not such as to lead an ordinarily prudent person to believe that she was not then asserting title thereto. The jury further found that Binford had not had peaceable and adverse possession of said land for a period of time and under the conditions necessary for him to have acquired the title to said land under the 3, 5 and 10 years statutes of limitation.

Appellant Binford contends that judgment was properly rendered in his favor for the reason that Mrs. Snyder's cause of action was barred by the 4 years statute of limitation.

■ This contention was urged by the appellant in the case of Hall v. Miller, 147 S.W.2d 266, wherein, under a similar state of facts, the four years statute, Art. 5529, was interposed as a defense. The court in that case overruled the limitation plea, holding that such statute was not applicable to suits for the recovery of land by cestui que trust under constructive, resulting or express trusts and that, since the action in that case, as in the instant case, was one for the recovery of real estate, the four years statute did not apply; citing numerous authorities.

Under their 6th and 7th points appellees contend that Mrs. Snyder is estopped to assert any title to the land in controversy for the alleged reason that the land had been conveyed to them in exchange for stock more than seven years prior to the filing of the suit, with full knowledge on the part of Mrs. Snyder that Carnes had received stock in exchange for the land.

The jury found in substance that the Traweeks knew that Carnes was authorized to sell said land for cash only; that Traweek knew that Mrs. Snyder had an interest in the land at the time of the execution and delivery of the deed from Carnes to Mrs. Traweek; that Binford knew that Mrs. Snyder had an interest in the land before he purchased the 89.23 acres from the Traweeks; that Binford knew, before he purchased said land from the Traweeks, that Carnes was authorized to sell the land for cash only and that "the words, acts and conduct of Mrs. Snyder," prior to the date the $3000 was paid by Binford to M. B. Traweek, were not such as would lead an ordinarily prudent person to believe that she was then not asserting title to the 89.23 acres of land claimed by Binford.

■ Our courts have uniformly held that silence or failure to assert title to land while it is adversely claimed, conveyed or occupied is not in itself sufficient to create an estoppel. Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 114 S.W.2d 226, 136 S.W.2d 207.

In the case of Logan v. Aken, 123 S.W. 2d 401, 404 (writ dismissed), it was held that "The doctrine of estoppel is applied to protect those who are innocent of the facts and are misled. One who knows the facts cannot effectively say that he has been deceived."

In the case of Cawthon v. Cochell, 121 S.W.2d 414, writ of error dismissed, the facts were similar in all material respects to those in the instant case in that the evidence established that Mrs. Cochell, a widow, 83 years of age, knew very little about business. She could read only with difficulty and had no one on whom to rely in transacting her business. She first executed and delivered to Cawthon a power of attorney to manage her "landed interests" and other property. She depended on him for advice "and meekly followed his suggestions and instructions without questioning them." Cawthon prepared and had Mrs. Cochell execute a deed conveying certain lands to him for a recited consideration of $250. Later Mrs. Cochell signed a letter jointly with him addressed and delivered to the Federal Land Bank in Houston, in which it was stated that the $250 which was recited in said deed as having been paid represented certain commissions due him and the assumption of indebtedness against the land which was held by the Federal Land Bank constituted the consideration paid for the land. Cawthon contended that Mrs. Cochell was estopped by this letter from asserting that she held the equitable title to said land. The court held that "under the approved definitions of the various trusts created by the beneficial principles of equity, this case, upon the pleadings and proof, falls clearly within what equity terms a constructive trust."

Upon the question of estoppel because of the statements contained in said letter to the Federal Land Bank, the court held that it was unable to see any elements of estoppel in that contention since it was not contended that, by signing the letter presented to her by Cawthon, Mrs. Cochell had induced him to perform any act which he otherwise would not have performed.

Binford alleged in his plea of estoppel that he had access to written opinions stating that the title to said land was good in E. C. Carnes; that he paid the Traweeks $3,000 for said land and that in May, 1935, he requested and received from Mrs. Snyder and Carnes a deed conveying all their interest in said land to him.

The quitclaim deed on which Binford bases his plea of estoppel recites a consideration of $10. He does not contend and there is no evidence in the record that he paid anything for this conveyance. He does not contend that he was induced by any of the facts alleged in his plea to act in any way to his detriment. Under this record the essential elements of estoppel are, we think, lacking.

In the instant case it is undisputed that appellees knew prior to the execution of the deeds by Carnes to them that said land was conveyed in trust and that it was to be sold only for cash.

These facts apply equally to appellee Binford's contention that Mrs. Snyder ratified her actions in transferring said land by deed to E. C. Carnes, in failing to file suit upon being apprized of the fact that Carnes had accepted stock in payment therefor and in joining Carnes in the execution of said quitclaim deed to Binford. The record shows that she did not agree to accept stock for her land. She was told from time to time that she would be paid for her land but that it would take time. Carnes testified that Mrs. Snyder told him she did not want stock, that she wanted money and that she had refused to accept the stock. The jury found, in answer to special issue No. 7, that after she had learned that Carnes had traded her land for stock she did not accept it.

The rule as to the effect of such evidence is stated in the case of Burleson v. Earnest et al., 153 S.W.2d 869, 876, in which the court in its opinion said:

"Such matters as affirmance, acquiescence, and ratification present questions of fact, (citing authorities). They are based upon acts, conduct or statements which imply an agreement or conclusion to accept the consequences and approve the manner in which a transaction has been consummated and waive any elements thereof which may have resulted in a right of action or given legal warrant for repudiation."

Mrs. Snyder's lack of full knowledge and the fact that the jury found that

after she learned that Carnes had traded her land for stock she did not accept the stock, we think, eliminates any question that appellees could now successfully urge that Mrs. Snyder ratified the trades Carnes attempted to make.

The following authorities uphold the rule laid down in the Burleson case, supra: C. E. Parks Grain Co. v. Townsend, 267 S.W. 1011; Miller v. Ahrens, 163 F.2d 870; Carlile v. Harris, 38 S.W.2d 622; DeShazo v. Wool Growers Central Storage Co., 139 Tex. 143, 162 S.W.2d 401.

The above facts apply with equal force, we think, to appellee Binford's plea of waiver.

While there is a distinction between waiver and ratification, both require full knowledge and intention to waive. Goodwin v. Abilene State Bank, 20 S.W.2d 1090.

It follows, we think, that, under this record, including the · findings of the jury, there were no elements of estoppel that could have been invoked against Mrs. Snyder; that there was no ratification of the unauthorized acts of Carnes, the Traweeks, and Binford and that under the record she did not waive her rights in said land.

It follows from above conclusions that the judgment of the trial court awarding the 89.23 acres of land out of the Wiley Smith Survey to T. A. Binford must be reversed and judgment here rendered in favor of Lillie Violet Snyder and her husband as to the 68.39 acres thereof described in the deed from Lillie Violet Wunsche to Ernest C. Carnes, dated January 14, 1935, and recorded in Volume 966, page 384, of the deed records of Harris County, Texas, and that as to the remaining 20.84 acres of the 89.23 acre tract, which 20.84 acres is described in the deed from Lillie Violet Wunsche to Ernest C. Carnes, dated July 16, 1934, and recorded in Volume 948, page 723, the judgment of the trial court must be affirmed. In all other respects, the judgment of the trial court will be affirmed.

Affirmed in part and in part reversed and rendered.

On Motion to Correct Opinion.

Appellants, M. B. Traweek and wife, Zoie Traweek, and appellee, T. A. Binford, have jointly presented a motion to correct a misstatement in the findings of fact of this court in its original opinion that:

"E. C. Carnes testified that before he sold any of said land to Mrs. Zoie Traweek,

the terms of the sale were discussed at a meeting at which he, M. B. Traweek, and Mrs. Zoie Traweek and T. A. Binford were present and that he informed them at this meeting that he held said land in trust for Mrs. Snyder, then Wunsche, and that he was only authorized to sell it for the sum of $26,000 in cash. He testified that, prior to that time and prior to the time the land was conveyed to T. A. Binford by Mrs. Zoie Traweek and M. B. Traweek, he had told Binford that he held said land in trust for Mrs. Wunsche and that he was authorized to sell it for cash only."

While the record shows that E. C. Carnes did not, as stated in the court's opinion, testify in haec verba that before he sold any of said land to Mrs. Zoie Traweek he had informed either the Traweeks or T. A. Binford that he held the land in trust for Mrs. Snyder, and that he was authorized to sell it for cash only, the jury, in answer to special issues submitted, found:

That Mrs. Snyder had executed the deeds conveying the land in controversy to E. C. Carnes for the "sole purpose of enabling him to sell" the land;

That she had instructed Carnes to sell the land "only for cash";

That at the time of the delivery of the deeds from Carnes to Mrs. Zoie Traweek, and from the Traweeks to T. A. Binford, both M. B. Traweek and T. A. Binford knew that Mrs. Snyder had an interest in said land and that she had instructed Carnes to sell it "only for cash"; and

That Mrs. Snyder did not know at the time of the delivery of the deed from E. C. Carnes to Mrs. Zoie Traweek that he was trading the land for stock in a gold mining company and that she did not accept the stock after she learned that Carnes had traded the land for it.

Under the above findings of fact by the jury, it is, we think, clearly apparent that Mrs. Snyder retained the equitable title to said land when she transferred it to Carnes for the purpose of enabling him to sell it for her, and that he thereby became vested with the legal title thereto. Under these facts Carnes clearly held the legal title to said land in trust for Mrs. Snyder, and under the record it was purchased by Mrs. Traweek and Binford with knowledge of these facts.

The jury made these findings from first hand evidence adduced before them from witnesses whose credibility and the weight to be given their testimony was determinable by them and upon what we deem to be sufficient evidence, which is binding upon this court.

The above corrections in no way affect the final determination of this cause as embodied in our former opinion.