Argued August 10, decided November 29, 1910.

## URQUHART *v.* BELLONI.

[111 Pac. 692.]

MORTGAGES—FORECLOSURE—RIGHT OF REDEMPTION.

1. A payment to the State, foreclosing a mortgage securing a loan made by the State Board of Land Commissioners, of the amount due under the decree, made at any time within four months of the confirma-

tion of the foreclosure sale, removes the equitable title of the State and it falls into the legal title.

CONTRACTS—PERFORMANCE—PRESUMPTIONS.

2. Where one agrees with another to pay a sum of money or to do a thing and no time is fixed for performance, the law presumes that performance shall be within a reasonable time, controlled by the circumstances of the case.

CONTRACTS—PERFORMANCE—PRESUMPTIONS.

3. A promise by one to pay the debt of another, without fixing any time for payment, is a promise to pay the debt when it becomes due.

TRUSTS—CONSTRUCTIVE TRUST.

4. The legal owner of a tract of land, subject to the equitable title of the State as purchaser at a foreclosure of a mortgage given to secure a loan made by the State Board of School Land Commissioners, sold a part thereof to a purchaser, who covenanted to pay the State the amount of its judgment, and thereby preserve the legal title to the entire tract and render effective the deed to him. No time for payment was fixed. The purchaser failed to pay within the time fixed to redeem, but subsequently thereto he paid the amount to the State and obtained a deed to the entire tract. *Held*, that the purchaser made himself *ex malificio* a trustee of the title to the land retained by the owner.

ESTOPPEL—EQUITABLE ESTOPPEL—EVIDENCE—SUFFICIENCY.

5. The doctrine that an owner of land may by an act *in pais* preclude himself from asserting his legal title can only be applied on the disclosure of clear and satisfactory grounds of justice and equity, and the evidence establishing the alleged estoppel must be clear and satisfactory.

ESTOPPEL—EQUITABLE ESTOPPEL—MISREPRESENTATION — INTENT — EVIDENCE.

6. Evidence *held* not to show that a purchaser's misunderstanding as to the amount of' land to be conveyed was due to any intentional misrepresentation on the part of the vendor.

ESTOPPEL—ESTOPPEL AGAINST ESTOPPEL—LACHES.

7. A purchaser of land, obtaining by the deed the full amount purchased, may not claim additional land of the grantor on the theory of an equitable estoppel where he was guilty of laches resulting from his remaining silent as to his claim for several years, and the equitable estoppel if enforced would result in injury to the grantor because of the laches, accompanied by inequitable conduct of the purchaser.

From Coos: JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE SLATER.

This is a suit by Alexander Urquhart against George Belloni to quiet his title to 111 acres of land, of which but 17.90 acres are in actual controversy. This small piece of land, triangular in shape, forms the northwest half of lot 3, section 18, were that lot bisected by a diag-

onal line running from its southwest corner to a point near the northeast corner; such lot being nearly rectangular. Plaintiff owned 265.41 acres of land, including said lot 3, all bounded on the north and west by the Coquille River in Coos County, and a considerable portion of the tract consisting of bottom land, suitable, when cleared, for cultivation; the remainder being hilly and of little value.

In 1893 plaintiff, to secure a loan of $2,500, mortgaged the entire tract to the Board of School Land Commissioners of the State. Defaulting in his payment of the interest, the mortgage was foreclosed, and, on June 23, 1902, the land was sold and purchased by the State for the amount of the decree. On September 8th following the sale was confirmed, and, under the law as it then stood (1 Hill's Ann. Laws 1892, § 303), plaintiff had four months from that date in which to redeem. On September 18th plaintiff sold, for $5,500, 154.41 acres of the tract to defendant; the land sold being described as lots 1 and 2 and the E. ½ of the N. W. ¼ of section 18, and lot 8 of section 7, all in township 28, south of range 13, west of Willamette Meridian; plaintiff and his son executing a deed, conveying the same to defendant, and warranting the title, except the judgment in favor of the State Land Board for the sum of $3, 980.85, which latter amount defendant, as grantee, expressly assumed and agreed to pay as a part of the consideration to be paid for the land. At the time of the delivery of the deed defendant paid plaintiff the balance of the purchase price in money, but did not pay to the State until April 7, 1905, the amount due on the judgment, when he secured from the State a conveyance to himself of the legal title to the entire tract, a sheriff's deed having issued to the State on December 18, 1903. Thereafter, on January 16, 1907, plaintiff brought this suit under the statute to quiet his title to 111 acres of land, that part of the original

tract which was not included in his deed, and which he claims was not sold to defendant. The complaint is in the usual form and describes the land involved as lot 1 of section 17, and lots 3 and 4 of section 18, in township 28, south of range 13, west of Willamette Meridian.

The defendant, by his answer, disclaims any right in or to lot 1 of section 17, lot 4 of section 18, and the southeast half of lot 3, section 18, and, with his answer tenders to plaintiff a deed executed by himself and his wife, quitclaiming said land; but as to the triangular piece, containing 17.90 acres, and forming the northwest half of lot 3, he sets up an equitable estoppel against the right of plaintiff to assert any title thereto because of these alleged facts; that at the time he purchased from plaintiff he understood that he was to have all of the bottom land on the entire tract; that plaintiff agreed with and represented to defendant that the premises described in the deed, which he received from plaintiff, contained all of said bottom land, and represented to him that the east line of the premises conveyed commenced at a pair of bars on the river bank, near the northeast corner of lot 3, running thence to a certain tree at the top of the hill some 80 or 90 rods distant, and at the southwest corner of lot 3, which would include the 17.90 acres in dispute; that defendant was unacquainted with the location of the lines described in his deed, and, relying upon the representations of plaintiff as to what the deed included, he purchased the same and entered into possession thereof; that plaintiff's representations were false were known to plaintiff to be false, and were made for the purpose of misleading defendant, and did mislead him; that at the time of the consummation of the sale plaintiff put defendant into possession of the identical premises that had been pointed out to him as included in the sale, but that the deed executed and delivered by plaintiff to defendant did not convey all the land sold to

him.   Defendant admits that he received a deed from
the State for the entire tract, but alleges that he is unad-
vised and does not know why such deed was executed
and delivered to him; that since he purchased from plain-
tiff he has been in peaceable occupancy and possession
of all the lands purchased by him, including the 17.90
acres in dispute.   He prays that his title be quieted
against plaintiff's claim of title.

The reply puts at issue the new matter of the answer
and affirmatively alleges all the transactions plaintiff had
with defendant respecting the sale of the land, defend-
ant's failure to pay to the State the amount of its judg-
ment before the expiration of the time of redemption,
and that defendant secured the deed from the State for
the purpose of defrauding plaintiff.

Plaintiff obtained a decree to the effect that he is the
owner in fee, and entitled to the immediate possession,
of the 111 acres.   Defendant was enjoined from assert-
ing any title thereto, and has appealed.   AFFIRMED.

For appellant there was a brief over the names of
Mr. A. J. Sherwood and Mr. L. A. Liljeqvist, with an
oral argument by Mr. Sherwood.

For respondent there was a brief over the names of
Mr. E. D. Sperry and Mr. William C. Chase, with an
oral argument by Mr. Sperry.

MR. JUSTICE SLATER delivered the opinion of the court.

The deed from plaintiff to defendant describes by legal
subdivisions the land conveyed, and it is admitted by
defendant that the description covers or includes 154.41
acres of land, the full amount he claims to have pur-
chased from plaintiff.   But it is asserted that he under-
stood his purchase was to include all the bottom land
on the entire tract then owned by plaintiff; that the 17.90
acres in dispute is mostly bottom land; that it is not

included in the description of the deed, but adjoins the land described on the east; that when plaintiff was showing him the land at the time of the negotiation for the sale, he, plaintiff, pointed out to defendant where the east boundary line ran, and that it was so described and located on the ground as to include the land in dispute; that relying upon plaintiff's representations, he concluded the purchase, entered into possession, and made valuable improvements thereon. The main question to be determined is an equitable estoppel, set up by defendant against plaintiff's right now to assert his title. To arrive at the merits of the case it is necessary first to clearly understand the situation of the parties as to the title at the time this suit was brought.

1. At the time plaintiff sold and conveyed to defendant 154.41 acres of the land, he was possessed of the legal title to the entire tract. It was burdened, however, with an equitable title in the State as purchaser at the foreclosure sale, which right, by the lapse of time and the execution of a sheriff's deed, was liable to ripen into a full legal title. But upon payment to the State of the amount due under the decree, at any time within four months from the confirmation of the foreclosure sale, this equitable right would fall into the legal title: *Cartwright* v. *Savage,* 5 Or. 397, 399; *Settlemire* v. *Newsome,* 10 Or. 446; *Flanders* v. *Aumack,* 32 Or. 26 (51 Pac. 447: 67 Am. St. Rep. 504).

2. Thus plaintiff's record title to that intended to be retained by him, as well as that conveyed by him to defendant, would be freed from the equity of the State, and defendant would have needed no other assurance of title than plaintiff's deed. In the deed he received, he covenanted to pay to the State the amount of its judgment. It is manifest that this covenant was intended for plaintiff's benefit, not only that the judgment should be paid, but that payment should be made in time to pre-

serve to him the legal title to that part of the land
intended to be retained by him, as well as to render effec-
tive the deed plaintiff gave to the defendant. No time
for such payment was named in the deed, nor is it shown
by any satisfactory evidence *dehors* the deed that any
time was agreed upon. Ordinarily where one agrees with
another to pay a sum of money, or to do a thing, and
no time is mentioned for the performance of such agree-
ment, the law presumes that the money shall be paid,
or the thing done within a reasonable time, and what a
reasonable time is will be controlled by the circumstances
of the case.

3. If the agreement is to pay the debt of the obligee,
it is a promise to pay the same when it becomes due:
*Haas* v. *Dudley,* 30 Or. 355, 362 (48 Pac. 168).

4. The circumstances presented by this case justify
the inference that the judgment was to be paid not later
than four months from the date of the confirmation of
the sale, for otherwise plaintiff would lose his title to the
land retained by him, and his deed to defendant would be
insufficient to vest in defendant an unincumbered legal
title to the part sold, which manifestly it was intended
to do. It was not contemplated by the parties at the time
of the sale that defendant should obtain a title through
the State, but from plaintiff. By delaying payment until
the legal title became vested in the State, and then secur-
ing from the State a conveyance of the entire tract to
himself, he secured a legal title to land that he admits
he had not bought, and to which he had no right, and this
was done in violation of his covenant to preserve and pro-
tect plaintiff's legal title to the remainder of the tract.
By his acts he has made himself *ex malificio* plaintiff's
trustee of the title to the 111 acres of land not described
in plaintiff's deed to defendant, and in equity he is bound
upon demand to reconvey the same. It is claimed in his
behalf that he took the title in good faith, believing he

had received from the State a deed only to that part of the land purchased by him from plaintiff. A careful examination of the record does not support this contention. Before final payment was made to the State he was apprised of the fact that the land now in dispute was not included in his deed from plaintiff. He mentioned the matter to L. A. Roberts, the local agent of the State, who had looked after defendant's interest in the whole transaction. Roberts forwarded for defendant the amount of money due the State, requesting that a deed issue to defendant, without mentioning what such deed should contain. When Roberts received the deed he delivered it to defendant, saying: "I place this deed in your hands until I get this matter straightened." Six days thereafter the deed was placed on record, but nothing was ever said to plaintiff about defendant having the deed, or about the mistake claimed to have been made in the original deed, and plaintiff did not learn of the issuance of the deed by the State until shortly before he commenced this suit. Under such circumstances can defendant resist plaintiff's equitable right to assert his full legal title to the 111 acres of land by the equitable estoppel set up as to the 17.90 acres in controversy?

5. Under the most favorable circumstances before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference. 16 Cyc. 748. Mr. Justice ANDREWS in *Trenton Banking Co.* v. *Duncan,* 86 N. Y. 221, says:

"The authorities establish the doctrine that the owner of land may, by an act *in pais,* preclude himself from asserting his legal title. But it is obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity."

Sig. 11

This case is cited and quoted from by this court in
*Clark* v. *Hindman,* 46 Or. 67, 75 (79 Pac. 56). See, also,
*Ware* v. *Cowles,* 24 Ala. 446 (60 Am. Dec. 482) ; *Hub-
bard* v. *Insurance Co.,* 33 Iowa 325 (11 Am. Rep. 125).
Moreover the party setting up the estoppel must be free
from imputation of laches in acting upon the belief of
ownership by one who has no right: *Trenton Banking
Co.* v. *Duncan,* 86 N. Y. 221.

6. Without detailing the evidence it is sufficient to say
that in our judgment defendant has not established the
alleged estoppel by that clear and satisfactory evidence
required by courts of equity. At the time of negotiating
the sale plaintiff and defendant went upon the land and
walked over a good part of it. They were accompanied
by L. A. Roberts, who says he was looking after defend-
ant's interests. They then had a map or blue print of
the premises, which showed the several subdivisions.
There were some exterior fences on the lines, calculated
to advise the parties as to the cardinal directions of the
compass. It is testified, both by defendant and Roberts,
that while they and plaintiff were along the north bound-
ary of lot 3, section 18, and in the vicinity of the north-
west corner thereof, plaintiff pointed southerly to a dead
tree standing on the summit of a ridge, and said that
the southeast corner of the land he was intending to sell
to defendant was near that tree, and that the east line
ran from the tree on the hill down along the ridge to a
pair of bars in the fence near the northeast corner of lot
3; that these two points are substantially the corners of
the land conveyed by the deed, but it is denied by plain-
tiff that he represented or intended defendant to under-
stand by what he said that the east line of the land sold
ran along the ridge directly from the southwest corner
to the pair of bars near the northeast corner of lot 3,
thus dividing the lot diagonally. It is not asserted either
by defendant or by his agent Roberts that he understood

he was to get an irregularly shaped piece of land, such
as the line they are contending for would in fact make,
but that such line was in fact a quarter-section line. A
quarter-section line must necessarily run at right angles
to the section line, extending along the north line of lot 3,
the location of which line was pointed out to them at the
time, and it does not seem reasonable that an intelligent
person could have understood that a line so located, and
running at an acute angle with the section line, was in
fact the east boundary line of the northeast quarter of
the northwest quarter of that section. There were some
fences in the neighborhood, upon the west boundary lines
of this tract, which were calculated to advise defendant
and his assistant of the true directions, and it appears
from the testimony of Roberts, upon his cross-examina-
tion, that at the time he, with plaintiff and defendant,
was examining the land he was confused, "turned
around," so far as directions were concerned, and that
they took the supposed diagonal line for the true quarter-
section line. It does not clearly appear that this con-
fusion of his and defendant's minds was caused by any-
thing said or done by plaintiff, or that plaintiff, know-
ing of their confusion, took advantage of the situation.
The wrong impression made at the time upon the minds
of defendant and Roberts seems to have been the result
of their own bewilderment, and not brought about by
what plaintiff said or did. And again, as we understand
the testimony of Roberts, given on cross-examination,
he admits that what plaintiff said at the time, as to where
the east line of the premises sold was, appears to him
now to be consistent with plaintiff's present contention,
when he (Roberts) correctly understands the true courses
and directions. He says:

"That might be for the reason that he told us the line
followed *near* the ridge. He did not tell us the line ran
across the bottom there. If we had examined that and
measured that distance it would have been different."

Neither does it appear that plaintiff put defendant into possession of the land in dispute, except that the latter soon afterwards leased his farm to another, who went into possession. A later tenant, supposing this land was included in the defendant's farm, made some repairs upon the barn, and to some extent cultivated a small part of the land. But it does not appear that any considerable expenditure was made by defendant upon the disputed premises until after he had been informed that they were not included in the description contained in his deed.

7. The major portion of the improvements put upon the disputed premises was made after the issuance and recording of the state deed, which took place April 13, 1905. This suit was brought January 16, 1907. During that time defendant had said nothing to plaintiff about any errors in his own deed, nor that he had acquired the full legal title to the whole tract of land, but remained silent. It was only when he was compelled to answer the complaint in this suit that he set up an alleged fraud committed by plaintiff, to enable him to retain a title that he obtained through breach of his own contract. Here is laches accompanied by gross inequitable conduct by defendant, resulting in injury to plaintiff. Under such circumstances defendant is not in a position to ask a court of equity to construe doubtful and conflicting testimony in his favor, and for this reason, if for no other, the decree of the lower court ought to be affirmed, and it is so ordered.          AFFIRMED.