[Civ. Nos. 13257, 13267, 13338.  Second Dist., Div. Two.
May 19, 1942.]

CORNELIUS KALLMEYER, Respondent, v. ALVIN H. POORE et al., Appellants.

(Four Appeals)

Hector P. Baida, Orlando H. Rhodes, B. W. Burkhead and Claude A. Shutt for Appellants.

Arthur E. Briggs for Respondent.

STEPHENS, J. pro tem.—The present action is another step in a series of actions between various of the parties here involved, all affecting the same real property and which have occupied the attention of the courts for years. Eight superior court actions in addition to the present one, directly or indirectly relating to this property and the rights of some or all of the parties therein, are mentioned in the briefs, and in one of the latter a witness is quoted as saying that there had been more than 30 lawsuits filed. In the present proceeding there are 4 separate appeals, with 3 sets of briefs. Two of the appeals are from orders affecting costs and are briefed together.

The history of the transactions leading up to the extensive litigation between the parties herein is set forth in considerable detail in the decision of the Supreme Court in the case of *Watson* v. *Poore,* 18 Cal. (2d) 302 [115 P. (2d) 478]. That decision resulted from three appeals brought up together from the judgments in three separate actions that had been consolidated for trial in the superior court. All of the parties

herein participated in the trial and appeals in those actions except the respondent (plaintiff) herein. The general facts are as follows:

Plaintiff Kallmeyer was the owner of a tract of land containing 10 acres and designated as lots A, B, C and D. It was subject to a trust deed to one Hunt to secure Kallmeyer's note for $5,000. This note, with its trust deed security, later became the property of the Warren estate. Plaintiff contracted to sell 5 acres to defendant Watson for $10,000, the consideration consisting of $5,000 cash and an agreement by Watson to pay the above trust deed note, which, if carried out, would clear the entire tract of indebtedness. Watson entered into an agreement with the Lefflers to sell 2 acres to the latter for $6,500, of which $1,500 was cash and the balance to be paid at a date prior to the maturity of the above note. The Lefflers did not pay Watson and the latter did not pay the trust deed note. The Warren estate foreclosed pursuant to the trust deed and purchased the entire tract at trustee's sale. Later Poore purchased the 10 acres from the estate, paying $1,000 cash and giving a note and trust deed for $5,500, and took title in his own name.

Thereafter the Lefflers brought an action (Superior Court No. 371276) in declaratory relief and to declare a trust, naming Poore and Watson as defendants and alleging a conspiracy between them to cheat and defraud the Lefflers. Poore brought an ejectment action (Superior Court No. 394767) against the Lefflers alleging title in himself. Watson then brought an action (Superior Court No. 412182) against Poore and wife, alleging that Poore purchased the property from the Warren estate with funds furnished by Watson under an agreement to take title in Poore and hold it for Watson. These three actions were consolidated for trial and appeals were taken therefrom, resulting in the decision by the Supreme Court in 18 Cal. (2d) 302, *supra*.

After the disclosures made in Watson's complaint and in a deposition of Watson in that action, Kallmeyer filed the action which is the basis of the appeals now under consideration. In this action he makes all the other parties defendants, as well as numerous John Does, and charges a conspiracy between Poore and Watson to defraud him out of his interest in the property. The complaint contains 12 separately stated causes of action, relief being sought upon various theories.

While the appeal in the three actions above referred to (involving the parties other than Kallmeyer, plaintiff herein) was pending, the present action was tried and judgment rendered which undertakes to determine all the obligations of the various parties toward each other in connection with the 10-acre tract involved therein. Pending this appeal therefrom the Supreme Court has handed down the decision above referred to, which determines various rights of the parties involved in the said three actions, which had been consolidated, and remands the case for further hearing as to certain designated matters.

It may be noted that while Poore had the title in his name there were several other actions between some of the parties, in two of which there were judgments (which were not appealed) which purported to quiet title in Poore against Kallmeyer. These are attacked directly in the present complaint on grounds of extrinsic fraud and lack of jurisdiction, and were declared void as to Kallmeyer by the judgment under consideration on this appeal.

All of the matters presented in the voluminous briefs of counsel, including those of appellants Poore, have been given careful consideration, but it should be here pointed out, as it was in the decision of the Supreme Court above cited (and as determined by the trial court herein), that the Poores now have only a bare legal title, and they hold the property only as security for moneys expended on behalf of Watson, which have not been repaid. The real parties in interest before us in this appeal are, therefore, appellants Watson and the Lefflers on the one hand and respondent Kallmeyer on the other. However, the points made in the two appeals from the judgment are substantially the same, except the point made by the Poores that the evidence does not support the findings, and except, also, of course, the attack upon the portion of the judgment awarding damages against the Poores. An examination of the record discloses substantial conflict in the testimony upon each of the matters presented, and therefore the findings of the trial court may not be disturbed.

■ The principal attack is directed to the contention that the complaint does not state a cause of action. Accepting appellants' statement that "although designated as separate causes, those portions of the complaint numbered as separate causes of action state but one cause of action, even though plaintiff sought several forms of relief," we may examine

the complaint as a whole, and if when so considered a cause of action has been stated the objection has been met. Simply stated, the basic facts alleged are that plaintiff Kallmeyer owned the 10-acre tract subject to a trust deed for $5,000; that he sold 5 acres to Watson and as part of the consideration the latter agreed to pay the trust deèd note when it became due and thus protect plaintiff's remaining 5 acres; that Watson failed to do this, but assured plaintiff that he had arranged to borrow sufficient money from Poore to buy the property at the foreclosure sale and protect both of their interests; that both attended the sale, plaintiff relying upon this assurance, but that Watson, although he had the funds with which to do so, declined to bid, and plaintiff was helpless to bid, having made no financial arrangement therefor; that the property was bid in by the creditor, the Warren estate; that (as plaintiff later discovered) Watson and Poore had in the meantime secretly conspired together to defraud plaintiff and deprive him of his interest in the property by allowing the property to be bid in by the estate, then having Poore purchase the entire property in his own name but with Watson's money, and later, after plaintiff had been safely eliminated, to divide the property between them; that they had, prior to the sale, discussed the matter of purchase with the executor of the will in the Warren estate, including terms, and that this secret plan was carried out. The prayer of the complaint is that Poore be held to be a resulting trustee for Watson, having purchased with the latter's money, and that Watson be declared by reason of his fraud to be a constructive trustee of plaintiff's interest in the property. It should be here noted that no impropriety is charged against the executor. Moreover, the sale would in any event be subject to approval by the probate court.

It can hardly be doubted that upon this statement of facts plaintiff has a cause of action. Equity would not permit Watson to thus deliberately violate his contractual obligation and then profit by his own breach, at the expense of the person to whom he was obligated and who had a right to rely upon his performance in good faith. There are, of course, many complications and side excursions from the main issue that are omitted from the foregoing statement and these will be noticed hereafter, but they do not change the basic facts as above related and which, we believe, are

sufficiently set forth in the complaint to meet the objection of a general demurrer.

It will not be necessary to enter into a discussion of the various theories of plaintiff's complaint, such as enforcement of a vendor's lien, specific performance, or resulting trust, because we believe the facts in this case are sufficient to establish an involuntary or constructive trust. (*McMillen* v. *Olmsted,* 85 Cal. App. 656 [259 Pac. 1104]; *Urquhart* v. *Belloni,* 57 Ore. 314 [111 Pac. 692]; *Garvey* v. *Lashells,* 151 Cal. 526 [91 Pac. 498].) The case of *First National Bank of Seattle* v. *Mapson,* 181 Wash. 196 [42 P. (2d) 782], bears a remarkable similarity to the present case. Appellant therein went into possession under a purchase contract by the terms of which, in addition to other payments to seller, he was to keep up the payments on an outstanding mortgage. He failed to pay upon the mortgage indebtedness (or upon a subsequent mortgage which had been substituted for the first one) and foreclosure followed. The mortgagee purchased at the sale, and after expiration of the redemption period appellant purchased from him and thereafter claimed title free from any obligation to pay further to his vendor. The court rejected this contention and said that ''the prior foreclosure action was brought about and occasioned, as the court found, solely by reason of appellants' failure to keep up the payments which they were required to make on the mortgage. Regardless of the superior right which the Washington Mutual Savings Bank had in the property by virtue of its lien, *appellants cannot assert that right against their own vendors. They cannot take advantage of a title which was made possible by their own breach* of covenant and default.'' (Italics ours.) ■ Appellants argue that this principle applies only to the case of a vendee in possession; that Watson was ousted of possession of lots B, C and D and was never in possession of lot A, and that therefore the rule under discussion would not prevent Watson's purchasing the property.

The case of *Slocum* v. *Peterson,* 131 Wash. 61 [229 Pac. 20, 40 A. L. R. 1071], is strongly relied upon to support this position. However, that decision states that ''If a purchaser who has been let into possession by his vendor buys in a paramount outstanding title, he cannot set it up against the vendor, *unless he first makes a bona fide surrender of the possession.''* (Italics ours.) In the present case the very fraud itself involved Watson's losing title and possession to

Poore, his secret trustee. Therefore he is in no position to take advantage of the claimed fact that he was not in possession at the time of Poore's purchase. It would be a strange rule of equity that would see only the incident of change of possession and overlook the fraud of which that was a part; and it would be still more extraordinary if equity accorded Watson an advantage because he not only took the land he was buying, without performing his contract for its purchase, but also took all the rest of his vendor's land concerning which he had no contractual rights whatever but which he was obligated to protect for his vendor.

■ Appellants urge that the action is barred by the statute of limitations. This being a fraud action, the limitation period began to run only upon discovery of the fraud by the aggrieved party. (Code Civ. Proc., § 338, subd. 4.) It is alleged in the complaint and found by the trial court that this discovery was in November, 1936. The complaint was filed in August of 1937. This being a question of fact, the finding of the court upon conflicting evidence will not be disturbed.

■ Extensive argument is presented upon the matter of the two judgments obtained by Poore while he held title and which were held to be of no effect so far as plaintiff's rights are concerned. The attack made upon them is a direct attack and therefore within the purview of equity, upon a proper showing. We think the complaint, considered as a whole, fairly states a case of extrinsic fraud in connection with these judgments, and these allegations were found by the trial court to be true. (*Caldwell* v. *Taylor*, 218 Cal. 471 [23 P. (2d) 758, 88 A. L. R. 1194] ; *Stenderup* v. *Broadway State Bank*, 219 Cal. 593 [28 P. (2d) 14].) In any event, as stated by the Supreme Court (18 Cal. (2d) 302), the Poores are not hurt by this determination of the court, as they hold the bare legal title for Watson, anyway. So far as Watson is concerned, being a party to the extrinsic fraud, he is in no better position than Poore. And in any event, any benefit which Watson might claim through action brought by Poore in his pretended individual capacity must be held by him as constructive trustee for Kallmeyer. Whatever feeds Watson's title passes on to his beneficiary.

Separate appeals were perfected on behalf of the Poores, on the one hand, and Watson, the Lefflers and Burkhead on

the other. The former brought up the reporter's transcript but the other appellants did not, and the former declined to stipulate that this record could be considered upon the latter's appeal. Watson and his co-appellants concede that under these circumstances their appeal can only be upon the judgment roll alone. The Poores hold only as bare trustees except for a possible lien for moneys expended in connection with the property. However, we are satisfied that the evidence supports the findings and that the latter are sufficient to support the judgment. Appellants Burkhead and the Lefflers join with Watson in the briefs and rely upon the same matters. The Lefflers were vendees of Watson and of course their rights are derived through him. Burkhead is attorney of record for Watson, and the court held that he took with notice, both actual and constructive, and that he holds only as security for attorney's fees and for his client. The rights of the Lefflers as well as Burkhead are protected under the judgment, and the latter finds sufficient support in the findings.

What has been said above concerning the interest of the Poores upon this appeal does not, of course, apply to the separate item in the judgment which awards damages against them.

Objection is made by appellants Poore on the ground that there is an improper severance of damages against themselves and Watson as joint tort feasors. As to the judgment against the Poores for $5,895, this was based upon causes of action numbers sixth, seventh and eighth, having to do with damage to plaintiff's personal property by reason of improper and illegal ouster and for unlawful withholding of possession of the real property and loss of rents, issues and profits thereof. The complaint does not charge Watson in these matters and seeks no judgment against him therefor. Assuming that he could have been held liable upon these counts, appellants cannot complain. Where there are two or more joint tort feasors plaintiff may proceed against one or more of them. (*Griswold* v. *Morrison,* 53 Cal. App. 93 [200 Pac. 62] ; *Shea* v. *City of San Bernardino,* 7 Cal. (2d) 688 [62 P. (2d) 365].) As to the separate items of $500, which Watson is required to pay before he receives title to his portion of the property, and $347.33, for which both Watson and the Poores are held responsible, the former is a matter of accounting for money paid by the receiver on behalf of Watson, and the latter is

for unpaid taxes upon lot A which the Poores and Watson failed to pay while they were in possession and receiving the rents thereof.

A somewhat complicated situation arises from the fact that the present judgment determines that the title of the property is in plaintiff (respondent) Kallmeyer subject to certain rights in and obligations upon Watson and the Lefflers and Burkhead, such rights and obligations being set forth in detail in the decree. It appears, therefore, to settle all rights as between respondent Kallmeyer and the other parties, and also the rights of all the parties as to the 10-acre tract or any portion thereof or interest therein. On the other hand, upon the appeal in the case of *Watson* v. *Poore* (Superior Court No. 412182), in which Kallmeyer was not a party, the Supreme Court (18 Cal. (2d) 302, 320) reversed that part of the judgment having to do with the financial accounting between Watson and Poore and directed the trial court ''to take such further proceedings as may be necessary to determine the amount of any indebtedness which may exist between appellants and respondent Watson and enter judgment accordingly. In the event the trial court determines that respondent Watson is indebted to appellants in any sum whatever arising out of the transaction for the purchase of said 10-acre tract, such indebtedness shall be a lien upon said tract.'' Inasmuch as all of the parties to the above actions were before the trial court in the instant case, and since the issues involved the same property and the interests therein of all those parties and also of Kallmeyer, plaintiff in the present action, it appears that all questions, insofar as they have to do with any interests, including liens, in the 10-acre tract, are now settled. However, in order that there may be an end to this litigation it is altogether probable that in the event there are further proceedings in the case of Watson versus Poore, as authorized by the above mentioned decision of the Supreme Court, the trial court may order that Kallmeyer, respondent herein, be made a party pursuant to Code of Civil Procedure section 389. The trial court may then determine what issues have been settled, and if any are found still undetermined they may be finally passed upon.

Separate appeals were also perfected by Watson and the Poores from the special orders made after final judgment herein, whereby the court granted plaintiff's motion for leave to file and approved plaintiff's cost bill and denied the motions

of defendants Poore and Watson to disallow plaintiff's costs and to strike the memorandum of costs on file. It appears from the record before us that judgment was entered on October 11, 1939. On October 13, 1939, counsel for plaintiff signed and dated a notice of such entry of judgment, but this notice was not served or filed on that date nor until October 26, 1939, when together with a memorandum of costs it was served by plaintiff and filed on October 28, 1939. Thereupon the above referred to motions were made. Plaintiff's counsel then asked and obtained leave to file a motion and affidavits for relief under section 473 of the Code of Civil Procedure. When this motion came before the law and motion department of the court the judge sitting therein granted leave to file the cost bill and filed a short memorandum of opinion. ■ While this memorandum is not strictly a part of the record, it has been brought up in the clerk's transcript and may be considered for the purpose of indicating the basis of the court's ruling; particularly where it shows, as it does in this case, that the court made no ruling at all upon the motion presented under Code of Civil Procedure section 473. (*Coakley* v. *Ajuria,* 209 Cal. 745 [290 Pac. 33] ; *Estate of Felton,* 176 Cal. 663 [169 Pac. 392].) ■ In this memorandum, after briefly stating the record as he understood it, this statement is made: ''Under the circumstances it seems to me that on this record section 473 of the Code of Civil Procedure is not involved at all and that the leave to file cost bill must be granted. So ordered.'' A careful examination of the record and of this memorandum discloses that the notice of entry of judgment was not clearly brought to the court's attention, and because of the coincidence that defendants' notice of intention to move for new trial was dated on the same day (October 13, 1939) the court thought this was the one relied upon and very properly held that it was not effective for such purpose. The important thing, however, is that the memorandum shows conclusively that no ruling was ever made upon the motion presented pursuant to section 473 of the Code of Civil Procedure. This would logically require sending it back to the trial court for appropriate action on the motion. However, such ruling would be based wholly upon the affidavits and records, all of which are now before us. Under such circumstances this court has jurisdiction to take action thereon and eliminate the cumbersome and unnecessary procedure of sending it back to the

trial court. (Const. of Cal., art. VI, § 4¾; Code Civ. Proc., § 956a.)

There is, we think, no escape from the fact that counsel for plaintiff had actual notice of the entry of judgment on October 13, 1939. The notice which he admittedly signed was clearly dated on that day, and he does not deny, but rather tacitly admits, that it was correcly dated. In the absence of contrary evidence the law presumes that it was correctly dated. (Code Civ. Proc., § 1963, subd. 23.) Actual notice is sufficient under section 1033 of the Code of Civil Procedure.

Did counsel, then, make a sufficient showing to justify relief under Code of Civil Procedure section 473? It appears that he had just been elected a member of the Los Angeles City Council, and (without intimating that this was sufficient in itself to upset one's equilibrium) it further appears that as a result his law office suffered a complete realignment, his associates made other arrangements, a new attorney was associated in part of his practice and even his secretary took other employment. The situation appears very similar to that presented in *Soda* v. *Marriott,* 130 Cal. App. 589 [20 P. (2d) 758], in which relief granted by the trial court was sustained. While a harsh viewpoint might suggest that the facts, when boiled down, amount only to a neglect to comply with the statute, on the other hand it is a matter of common knowledge, at least to all who have stepped from private practice into public office, that such a situation is conducive to oversight as to many details, without the person involved being guilty of negligence. In such a situation the courts should lean to liberality (no merits being involved), particularly when it is remembered that the client is the one who would be punished. If the result reached by the lower court can be sustained on any ground, even though not the one upon which such result was based, it is sufficient. As we feel that the showing herein justifies the granting of relief under Code of Civil Procedure section 473, the action of the trial court in granting respondent's motion to file cost bill and in denying appellants' motion to strike respondent's memorandum of costs will not be disturbed.

The judgment and orders appealed from are, and each is, affirmed.

Moore, P. J., and Wood (W. J.), J., concurred.

Appellants' petitions in Nos. 13267 and 13338 for a hearing by the Supreme Court were denied July 16, 1942.