[Civ. No. 17141.   Second Dist., Div. One.   Nov. 21, 1949.]

JACK K. RANSOM, as Special Administrator, etc., Respondent, v. ROSE WALLACE, Appellant.

Sidney W. Kaufman and N. Stanley Leland for Appellant.

William J. Currer, Jr., for Respondent.

DRAPEAU, J.—Plaintiff and his sister maintained a home together for many years.   Neither of them was married.   They lived on a little peach farm near Modesto.   They adopted two children, a girl named Rosemary and a boy named Anthony. They took care of the boy and girl as good parents should, sent them to school, and raised them to womanhood and manhood.

Plaintiff's sister died.   Title to the farm was conveyed to him by her deed before her death.   Then the girl left home and

came to Los Angeles to make her way. The boy remained with the plaintiff for a time and tried to run the ranch until he found that it would not support two families. So, in turn, he left the old home to strike out for himself.

As time went on, the infirmities of age began to catch up with the plaintiff. He grew more and more feeble. In 1941, he fell very ill and had to go to the hospital in Modesto. Learning of his condition, the boy went to Modesto and brought the old gentleman to the boy's home in southern California, to live with the boy and his family.

This arrangement continued until a third grandchild was expected in Anthony's, the boy's, home. Then the adopted daughter, Rosemary, arranged for her father to live in an apartment close to where she lived. The testimony is in conflict whether this move was because of bad feeling between the old man and Anthony and Anthony's family. Rosemary testified that it was; Anthony that it was not.

Rosemary undertook the care of her father. When he went to the apartment she rented for him he was 82 years of age, and feeble mentally and physically. She looked out for him, saw him every day, prepared his meals for him, bought his clothing, and took charge of his banking and business. All he did was to "back" checks payable to him, so that the money could be deposited in his account, and sign any papers she told him to. It goes without saying that this was a relationship of highest trust and confidence.

February 13, 1942, the father conveyed by deed for love and affection the Modesto property to the daughter. It is this conveyance which constitutes the subject of controversy in this lawsuit.

The father testified that he had no recollection of signing the deed; that he thought he had signed a power of attorney to enable the daughter the better to take care of his property. It is but fair to say that when he testified his memory was exceedingly vague, uncertain, and faulty. He was certain on one point, however, and that was that the Modesto ranch was his property and not his daughter's.

The daughter testified that her father gave her the ranch because he wanted her to have it, and because he did not want Anthony to have it. This testimony was corroborated by several friends of the daughter who testified that the old gentleman had told them he had given the ranch to her.

The daughter further testified that when her father told her he wanted to give her the ranch, she took him to her lawyer

who had been taking care of other matters for her. This lawyer (who tried the case, and who was not any of counsel appearing on this appeal) testified that the plaintiff said he wanted the property conveyed to his daughter; that he wrote a letter to the County Recorder of Stanislaus County to secure the legal description; and that when the description was received the deed was prepared and forwarded by mail to the daughter. In this transaction counsel was acting for the old gentleman, and was his attorney.

Over the objection of plaintiff, the lawyer witness was permitted to testify to the directions of the plaintiff and of the defendant concerning the preparation of the deed, to the declarations of the plaintiff as to the purpose of the deed, and as to counsel's impressions of the physical and mental condition of the plaintiff. This testimony was admitted because the daughter was present at all times when the old man talked with his lawyer, and the court ruled that there was no privilege as between the plaintiff and his lawyer. Such practice does not commend itself; it is highly dangerous, and is not approved. Such practice affords opportunity for the unscrupulous to manufacture a situation whereby a party represented by counsel may find himself later on confronted by the adverse testimony of his own lawyer.

When the plaintiff discovered that he had deeded the Modesto farm to his daughter, he called upon the son for help. The son, in the meantime, had moved to Sacramento. The son immediately came to Los Angeles, and took his father to Sacramento to live with him. Shortly thereafter suit was filed.

The case was carefully tried and seriously considered by the trial judge. When all the testimony was in, a recess was taken for a week, so that the judge might read all of the exhibits. The contents of these exhibits undoubtedly materially influenced the decision. There are several letters among the exhibits, written by Rosemary, in which she made statements which convinced the court that the plaintiff did not have the necessary understanding of the transaction in 1942 to constitute the deed as an outright conveyance; and that, in any event, it was neither the intent nor the purpose of the parties that anything more than the bare legal title was being conveyed to the daughter. "She was managing it for Dad." She was holding it "as a naked trust to prevent him from making some other disposition of it."

Having come to these conclusions, the court then took testimony for an accounting between the parties.

Findings were made that the plaintiff was entitled to a reconveyance of the property, and that the defendant was indebted to him in the amount of $9,456.89; and judgment followed; from which judgment defendant appeals.

After the trial the plaintiff died, and a special administrator was substituted in his place. For the purposes of this opinion the decedent has been and will be referred to as the ''plaintiff.''

Defendant grounds her appeal on two propositions: that plaintiff's cause of action was barred by the statute of limitations; and insufficiency of the evidence to support the findings.

The first ground must fail because it is in testimony that plaintiff's action was filed within two weeks after he found out he had deeded the property to the daughter. (*Antonsen* v. *Pacific Container Co.*, 48 Cal.App.2d 535 [120 P.2d 148]; *Kallmeyer* v. *Poore*, 52 Cal.App.2d 142 [125 P.2d 924].) The confidential relations between the parties also supports the findings. (12 Cal.Jur. 799.)

The second ground must also fail. Substantial evidence is found to support the findings—the declarations of the defendant in her letters, the physical and mental condition of the father, his difficulty in reading and writing, or to see well, with or without glasses, the relationship of trust and confidence between the father and daughter, and the fact that the property conveyed was the only income property which plaintiff owned. Under the rules on appeal which this court is required to apply, the findings must be approved.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.