[Civ. No. 18067.   First Dist., Div. One.   Mar. 2, 1959.]

MATTIE C. De PUY, Respondent, v. ELLA C. SULLIVAN, Appellant.

Arthur Harris for Appellant.

Ericksen & Ericksen, Donald H. Kincaid and Robert H. Kroninger for Respondent.

BRAY, J.—In an action for recovery of stock certificates standing in the names of plaintiff and defendant as joint tenants, defendant appeals from a judgment in favor of plaintiff.   Solely presented is the question of the sufficiency of the evidence.

## FACTS

The first amended complaint alleged in three counts that defendant obtained in joint tenancy certain securities belonging to plaintiff by reason of the confidential relationship existing between the parties and through fraud of defendant and mistake of plaintiff. The court decreed that plaintiff is the sole owner of said securities, that any interest of defendant in them is as constructive trustee, and ordered them transferred to plaintiff's name.

Defendant contends that as a matter of law the evidence shows an *inter vivos* gift of the securities to defendant in joint tenancy and that the statute of limitations has run as to the action. The case is purely and simply a factual one in which the evidence is in some respects directly conflicting and depends upon the acceptance of plaintiff's story that she did not intend to make a gift to defendant, and, in which, under the well known rule binding an appellate court, we are bound by the trial court's findings.

Plaintiff is 87 years old. Defendant is the foster daughter of plaintiff, and at the age of 12 came to live with plaintiff and her husband, living with them for approximately seven years, when defendant married. After living away, defendant returned to plaintiff's home in 1949 about two and a half weeks before plaintiff's husband died. Defendant concedes that a confidential relationship existed between the parties. The securities were held in joint tenancy by plaintiff and her husband. Shortly after his death plaintiff and the attorney who was representing her in connection with her husband's death and the other properties left by him, went to the husband's safe deposit box in which were the stock certificates. Plaintiff does not recall signing a signature card making defendant a joint tenant in the box, signing the certificates or instructing the attorney to have the certificates transferred into a joint tenancy with defendant. She did recall that a joint checking account between herself and defendant was opened shortly after the husband's death. Some of the stock dividends that accrued were deposited directly in the bank and some were first sent to plaintiff at her home. The latter came just in plaintiff's name, but shortly thereafter they came with both plaintiff's and defendant's names on them. Plaintiff asked defendant the reason for this and defendant stated: " 'I fixed it so that I could take care of it if anything happened to you' " and " 'I fixed it so that I could take care of the dividends in case you were ill.' " The fact of both names

being on the dividend checks did not seem of consequence to plaintiff; plaintiff used all the dividends for her own income and support. She first discovered that the certificates were missing from the box in May of 1956. She then removed defendant's name from the joint account box. However, she continued, as in the past, to send the dividend checks to defendant who signed and returned them to plaintiff. Plaintiff then deposited them in her own bank account. Plaintiff denied ever intending to give or giving any interest in the stocks to defendant.

Defendant testified that she advised plaintiff in her business affairs and had access to her business papers. May 2, 1949, at plaintiff's husband's request, defendant's name was placed on the joint bank account with plaintiff. May 11, after his death, defendant's name was placed on the joint safe deposit box. At the bank where the securities were kept, plaintiff requested her attorney to "turn . . . over" the stock certificates to a joint account with defendant. Plaintiff then signed the old certificates. Plaintiff stated, " 'I would like to have you have these [securities] after I am gone.' " Defendant "accepted." Plaintiff often said, referring to the stock certificates, " 'These will be yours when I am gone.' " The dividend checks were deposited in the joint bank account until April, 1956, when they were sent by the bank to plaintiff who sent them to defendant who signed and returned them to plaintiff who deposited them in her own account. All the "dividends, profits, and so on" have accumulated to plaintiff's benefit. It was stipulated that plaintiff would deny stating to defendant that she wanted defendant to have the securities if anything happened to her. Defendant was not sure that she was ever present when plaintiff signed any of the certificates, but plaintiff told her she read them before signing. As the certificates issued in their joint names came in, plaintiff gave them to defendant to place in the safe deposit box. In April, 1955, plaintiff's attorney called defendant stating that plaintiff wanted to cash in some of the certificates. Defendant then took all the certificates out of the joint box and placed them in her own box. Defendant did not tell plaintiff of this for about a year. Defendant never made personal deposits in the joint checking account where the dividends were deposited, but had drawn checks on that account for plaintiff's expenses, and never for her own personal benefit unless plaintiff knew about it.

The attorney testified that plaintiff requested him to take

the certificates out of her name and that of her husband and put them in her name and that of defendant. Plaintiff then endorsed the certificates in blank. The trial court expressly found that there was no fraud. It found that plaintiff at no time intended to, nor did she, make a gift of the stock, nor did she intend to convey any interest in it to defendant, and that at all times plaintiff exercised dominion and control over the stock, and had no actual knowledge that defendant claimed any interest in the stock until April or May of 1956.

## Evidence Is Sufficient

In his announcement of decision the trial judge, Honorable Folger Emerson, admirably sums up the evidence: ''The Court feels and will find from the evidence that plaintiff's action in placing the shares in the joint names of herself and defendant was motivated and affected by the transaction which plaintiff had just observed after the death of her husband. The court feels that Mrs. De Puy was impressed with the fact that she had acquired the shares without the necessity of probate through the termination of the joint tenancy of herself and her husband and that she decided to again place them in joint tenancy with the defendant to facilitate their disposition in the event of her own death. The court does not feel, however, that this amounted to a completed gift. The evidence shows quite the contrary. The plaintiff thereafter dealt with the stock in every respect as though she was the sole owner thereof. Her method of securing defendant's endorsement at all times before she, herself, endorsed the stock was an exercise of control designed to see that plaintiff acquired the dividends as her sole property. It is undisputed that all of the dividends went to plaintiff who exercised dominion over them.''

Defendant contends that because plaintiff placed the shares in joint tenancy stating that she desired defendant to have them on her death is conclusive evidence of an *inter vivos* gift. This is not so. To make such a gift there must be an intent to give a present interest. The evidence here supports the finding that there was no such intent. Plaintiff denies such intent and defendant can point to no evidence that overcomes plaintiff's testimony, believed by the court, that she intended no such gift. The conduct of the parties and even defendant's testimony as to what was said by plaintiff shows no more than that plaintiff, in effect, intended a testamentary disposition of the stock and not the passing of a present interest.

The situation here is similar to that in *Hotaling* v. *Hotaling*, 187 Cal. 695 [203 P. 745]. There a mother signed a written transfer of certain stock to her son who claimed that she gave the stock to him as a gift. At the trial the mother admitted the genuineness of her signature on the transfer but disclaimed any remembrance of the transaction which resulted in the transfer, but insisted that she never gave the stock to her son or knowingly transferred her title thereto. The son testified that the transfer was unsolicited on his part, and that the mother delivered the endorsed certificate to him and then signed as president of the company the new certificate issued to him. In our case, while the attorney testified that plaintiff instructed him to have the stock placed in joint tenancy of plaintiff and defendant, he did not testify that plaintiff said anything about making a gift to defendant nor giving any reason for the joint tenancy. In the Hotaling case there was "evidence on collateral matters and events tending more or less strongly to corroborate one or the other of the parties as to the main issue." (Pp. 698-699.) The finding of the trial court that no gift was intended or made was upheld, the reviewing court stating (p. 700) : "The plaintiff here testified that she never gave this stock to her son, or knowingly transferred her title thereto. If there is any weight to be given to this testimony it will not be disputed under the established rules of law in this state that a finding of the court in accordance with such testimony cannot be disturbed, whatever the views of the appellate court as to the comparative strength of the testimony to the contrary." In our case, the evidence in support of the trial court's finding is stronger than that in the Hotaling case. Here, in addition to plaintiff's testimony, which the court believed, there was shown plaintiff's almost complete dominion over and control of the stock after the alleged gift, and the defendant's own testimony showing that what plaintiff had in mind was a testamentary disposition rather than a present gift.

## STATUTES OF LIMITATION

■ Section 338, subdivision 4, Code of Civil Procedure, provides a three year limitation for "an action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

The court found that plaintiff's cause of action was not barred by the statute of limitations, further finding that plain-

tiff "had no actual knowledge that defendant claimed an interest in the shares until the shares were removed by defendant from the safe deposit box in April or May of 1956." Plaintiff was aged and had to sign numerous papers in 1949 in connection with her husband's death. She apparently endorsed the certificates in blank. The instructions for reissuance in joint tenancy were endorsed later. Defendant explained why the joint dividends were in their joint names, " '. . . so that I could take care of the dividends in case you were ill.' " Plaintiff's testimony that she did not discover that defendant claimed any interest in the stock until then, if believed, and it was believed by the trial court, constitutes sufficient support of the finding. See *Ransom* v. *Wallace,* 94 Cal.App.2d 723 [211 P.2d 339], where a father signed a deed to his daughter in 1942. He testified he had no recollection of doing so, and did not discover that he had until several years later. He brought suit shortly after such discovery. The court held that the action was not barred by the statute of limitations. See also *Kallmeyer* v. *Poore* (1942), 52 Cal.App.2d 142 [125 P.2d 924], a fraud action, in which the defendant contended that the action was barred by the statute of limitations. The court said (p. 149) : "It is alleged in the complaint and found by the trial court that this discovery was in November, 1936. The complaint was filed in August of 1937. This being a question of fact, the finding of the court upon conflicting evidence will not be disturbed."

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.